UNITED STATES DISTRICT

COURT SOUTHERN DISTRICT OF IOWA

CENTRAL DIVISION

| | |
|---|---|
| SHARILYN ERVIN,<br><br>Plaintiff,<br><br>v.<br>LINCOLN NATIONAL LIFE INSURANCE COMPANY and THE WELLMARK, INC. GROUP DISABILITY INCOME PLAN,<br><br>Defendants | Case No. 4:25-CV-00438-RGE-HCA<br><br>PLAINTIFF RESISTANCE to WELLMARK INC. GROUP DISABILITY INCOME PLAN'S MOTION TO DISMISS PLAINTIFF SHARILYN ERVIN'S FIRST AMENDED COMPLAINT |

## INTRODUCTION

This lawsuit arises from the wrongful termination of long-term disability benefits and the subsequent failure of a Plan Administrator to provide governing plan instruments. Plaintiff Sharilyn Ervin ("Ervin") alleges that the insurer, Defendant The Lincoln National Life Insurance Company ("Lincoln"), wrongfully terminated her benefits (Count I), and that the Plan Sponsor and Administrator, Defendant Wellmark, Inc. ("Wellmark"), breached its statutory duties by failing to provide required plan documents upon written request (Count II).

While the First Amended Complaint is presented as a single count, it clearly alleges two distinct forms of relief under ERISA: (1) a claim for benefits against Lincoln National, and (2) a claim for statutory penalties against Wellmark for its independent failure to provide plan instruments upon written request. Plaintiff's First Amended Complaint satisfies the notice pleading requirements of Fed. R. Civ. P. 8(a)(2). While the Complaint references a specific request from December 2023, the Plaintiff made several subsequent written requests—including the

February 27, 2024 request Exhibit 1—which were not individually listed, as the Federal Rules do not require the pleading of every specific evidentiary date to state a plausible claim for relief.

Now before the Court is Defendant Wellmark's Motion to Dismiss (ECF No. 25). Wellmark seeks dismissal by arguing it is an improper party, and that Plaintiff's statutory claim is time-barred. However, as set forth below, Wellmark's own exhibits and internal communications identify it as the Plan Sponsor and Administrator. Because Plaintiff has pleaded a plausible claim for relief supported by the United States Supreme Court's holding in *CIGNA Corp. v. Amara*, Wellmark's motion must be denied. Under 29 U.S.C. § 1132(a)(1)(B) (Recovery of Benefits) and 29 U.S.C. § 1132(c)(1) (Statutory Penalties for failure to provide documents) Plaintiff seeks to recover benefits for failure to provide documents within 30 days. 29 U.S.C. § 1002(16)(A)(ii) dictates that if a plan administrator is not explicitly designated in the plan documents, the plan sponsor is considered the administrator Exhibit 25-2, Page 48 Exhibit 25-3, Page 1 List Wellmark as the Sponsor

## **<u>Argument</u>**

Defendant Wellmark argues it is an improper party because it is not an insurer. This argument fails because Wellmark's actual conduct and its own exhibits establish it as the Plan Administrator. Wellmark has only produced the proper documents in this Motion to dismiss and only produced a 27-page Summary Plan Documents to Plaintiff. See Exhibit 2

The Supreme Court Holds that Summary Documents are Not the Plan. As the United States Supreme Court held in *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011), "summary documents,

important as they are, provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan."

Wellmark's Motion to Dismiss relies heavily on a Certificate of Coverage (Def. Ex. 25-3). However, under *Amara*, that certificate is not the legally binding plan. The actual Plan/Policy—which Wellmark only produced *after* this litigation began (Def. Ex. 25-2)—explicitly lists Wellmark, Inc. as the "Sponsor." Under 29 U.S.C. § 1002(16)(A)(ii), where no administrator is named, the Sponsor is the Administrator by default. Wellmark cannot withhold the binding Plan documents and then claim it has no administrative responsibility.

Wellmark Exercised Discretionary Authority and Control. Even if Wellmark were not the named Administrator, it is a proper defendant because it controlled the flow of information. *See W.H. v. Allegiance Benefit Plan Mgmt., Inc.*, No. CV 22-166-M-DWM, 2024 WL 2831032 (D. Mont. June 4, 2024). Plaintiff has proven that Wellmark's HR department personally handled the distribution of plan documents and directed legal inquiries to the Wellmark legal team. See Plaintiff's Exhibit 2. This confirms Wellmark acted as the gatekeeper of the Plan, making them a proper party. Wellmark attempts to dismiss Count II by claiming a statute of limitations of bar. This is refuted by the facts and recent federal case law.

New Violations Occurred Within the Statutory Period. Plaintiff made a renewed formal written request for plan documents on February 27, 2024. *See* Plaintiff's Exhibit 1. Because Wellmark failed to furnish the requested instruments within 30 days, a new violation occurred on March 28, 2024. This brings the claim well within the two-year window.

Defendant Wellmark's statute of limitations argument improperly attempts to limit the Plaintiff's claim to a single request from December 2023, ignoring the fact that the claim is based on the ongoing and repeated failure of the Administrator to furnish documents. As evidenced by the February 27, 2024 written request (Plaintiff's Exhibit 1), a separate and independent violation occurred when Wellmark failed to respond by March 28, 2024; this specific breach occurred less than two years prior to the filing of the First Amended Complaint, making the claim timely under the applicable statute of limitations. Furthermore, even if the Court finds the February 27 request constitutes a new factual allegation, it 'relates back' to the original filing under Fed. R. Civ. P. 15(c) because the claim arises out of the exact same conduct set forth in the original Complaint—Wellmark's continuous failure to furnish governing plan instruments—thereby rendering the Defendant's statute of limitations defense moot

Wellmark Cannot Deflect its Duties to Lincoln National. Wellmark's attempt to point toward the insurer was recently rejected in *Hamilton v. Logic20/20, Inc.*, No. C24-916RSL, 2025 WL 7752671 (W.D. Wash. Dec. 29, 2025). In *Hamilton*, the court held that a Plan Administrator has an independent statutory duty to provide documents and cannot tell a participant to "obtain them from the insurer."

The purpose of these penalties is "to induce administrators to timely provide requested plan documents." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994). Wellmark should not be rewarded for withholding binding documents from a participant only to produce them later to support a Motion to Dismiss.

Finally, Wellmark's suggestion for redundancy is unsupported. As established in *Dickson v. AT&T Umbrella Benefit Plan No. 3*, No. 4:23-cv-00456-DGK, 2024 WL 1623434 (W.D. Mo. Apr. 15, 2024), a plaintiff may proceed with both a claim for benefits and a claim for statutory penalties when they rely on "meaningfully different factual allegations." Count I address the denial of benefits by Lincoln, while Count II addresses Wellmark's independent failure to provide the governing Plan instruments. As a result of Wellmark's failure to comply with the written request dated February 27, 2024, Wellmark is liable for statutory penalties of up to $110 per day pursuant to 29 U.S.C. § 1132(c)(1), beginning on March 29, 2024, and continuing until such time as the requested governing instruments are furnished to the Plaintiff.

If the Court determines that further factual specificity is required regarding the February 27, 2024, request, or that the claims must be more clearly delineated into separate counts, Plaintiff respectfully requests leave to amend pursuant to the 'relation back' doctrine of Fed. R. Civ. P. 15(c). Such an amendment would arise from the same nucleus of operative facts as the original pleading and would ensure the administrative and statutory claims are clearly distinguished for the record

Defendants' attempt to characterize procedural abuse as limited solely to medical review errors misconstrue the nature of an ERISA claim. The procedure in an ERISA benefit determination is dictated entirely by the Plan Documents. When an administrator withholds those documents, they are committing the ultimate procedural abuse because they are denying the participant the map needed to navigate the appeal. My original allegation of procedural abuse provided fair notice that the Defendants' administrative conduct—which includes their statutory duty to

disclose documents—was the basis for this suit. Because the document failure and the medical denial arise out of the same 'common core of operative facts'—the handling of my 2023-2024 disability claim—the amendment relates back under Rule 15(c)

A procedural shell game where two billion-dollar entities provide contradictory information to a pro se litigant—and to a state regulatory agency—constitutes an extraordinary circumstance. As the Supreme Court noted in *Heimeshoff*, if an administrator's conduct causes a participant to miss a deadline, they are estopped from using that deadline as a defense. The Defendants should not profit from the very confusion they created by pointing fingers at one another.

First, this claim is timely because the February 27, 2024, request (Exhibit 1) constitutes an independent violation of ERISA. Because the Defendant had 30 days to comply, the cause of action did not even accrue until late March 2024. Therefore, the Plaintiff's filing on November 4, 2025, falls strictly within the two-year statute of limitations for this specific occurrence, regardless of any earlier requests.

Furthermore, even if the Court analyzes this under Rule 15(c), the claim relates back because it arises from the same common core of operative facts as the original filing. The February document request was an integral part of the appeal process; the procedural abuse alleged in the original Complaint (the broken appeal) was caused, in part, by the Defendants' refusal to provide the very Plan instruments needed to navigate that appeal.

Defendant Wellmark now argues to this Court that it is not the Plan Administrator and therefore not the proper party to sue for document penalties. However, Wellmark's own

internal communications from December 29, 2023, prove otherwise. In response to a request for Plan documents, Sheri Ragan (Wellmark) explicitly stated: 'Unfortunately, I will not be able to send you those documents. It is not our practice to send internal Wellmark documents to requests that are made outside of Wellmark.

Wellmark cannot claim on one hand that they are 'not the administrator' while simultaneously admitting in the administrative record that they possess the documents and have a practice' of withholding them. This email proves that the procedural abuse began with a flat-out refusal by Wellmark to comply with 29 U.S.C. § 1024(b)(4). Because Wellmark’s own representative blocked the request in December 2023, Wellmark is estopped from now claiming they are a stranger to this document dispute See Exhibit 3

Wellmark admits in the December 29, 2023, email that it refused to provide the requested documents based solely on the Plaintiff's employment status. Wellmark's practice of withholding documents from those outside the company is not a defense; it is a confession of a systemic procedural abuse I mentioned in my original complaint. Not providing the requested documents leads to procedural abuse because it effectively strips Plaintiff from a full and fair review under ERISAL. Lincoln's denial letters reference a Policy that Wellmark refused to provide

Plaintiff was forced to navigate a complex appeal process without knowing the mandatory deadlines or the specific required documentation needed for a successful claim. Plaintiff also

did not know the exact proof required by the policy, which proof of what was required is mentioned in the original complaint.

An SPD may impose a shorter window to file a lawsuit than state law allows. Without the document, Plaintiff unknowingly missed the deadline, which courts view as a significant procedural injury. Different plans use different standards (e.g., "own occupation" vs. "any occupation"). Without the plan document, you cannot know which standard you must meet with your medical evidence If the administrator withholds these rules, you cannot tailor your doctor's statements to meet their criteria. Plans have strict proof loss deadlines. Not knowing these can lead to a denial for late proof, even if your medical condition is undisputed. Failing to disclose documents impeded my ability to understand and protect my rights.

Defendant Wellmark committed a procedural abuse that left the Plaintiff unable to identify the required proof of claim, a duty that is non-delegable under ERISA. Even if the Court were to find that the initial limitations period had expired, the doctrine of equitable tolling applies here. As the Supreme Court noted in *Heimeshoff v. Hartford Life*, equitable principles prevent an administrator from invoking a limitations defense if their own dilatory actions or bad-faith delays prevented judicial review.

In this case, Defendant Wellmark's conduct was the definition of dilatory: they provided broken links, redirected Plaintiff to a third-party (Lincoln), and withheld the Summary Plan Description which contained the very proof requirements and limitation periods they now seek to enforce. A defendant cannot hide the rulebook and then move to dismiss because the plaintiff didn't

follow the rules hidden inside it." See *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99 (2013)

The fact that the Plaintiff addressed the email to both Wellmark (HR and Amanda Mommer) and Lincoln National (Tori Leach) is the very definition of the reasonable diligence required for equitable tolling. A participant who is being bounced between two entities—where one points to the other as the responsible party—is acting with extraordinary care by noticing both simultaneously. In addition to reaching out to state agencies for assistance.

If the Court were to find that earlier requests in 2023 are time-barred, the February 27, 2024, email constitutes a new and independent request triggered by fresh administrative interactions with Wellmark's HR department earlier that month. Because a cause of action under 29 U.S.C. § 1132(c)(1) does not accrue until the 31st day of non-compliance, the statute of limitations for this independent violation did not begin to run until late March 2024. Consequently, the Plaintiff's filing on November 4, 2025, is well within the two-year limitations period for this specific breach. The Defendants should not be permitted to use the Plaintiff's diligence as a shield for their own continued non-compliance.

In the context of ERISA, there is no greater procedural abuse than withholding the very documents that explain the procedure. Therefore, the amended claim is a clarification of the original timely-filed complaint, not an attempt to circumvent the statute of limitations.

Plaintiff's amendment is made in good faith and is not an attempt to circumvent the statute of limitations. As evidenced by Exhibit 1, both Defendants received formal notice of their statutory

document obligations as early as February 2024. The delay in specifically labeling this as a 'Section 1132(c) penalty' was a direct result of the ongoing confusion created by the Defendants regarding their respective roles in administering the STD and LTD portions of the Plan. Because the Defendants have possessed the relevant evidence and have been on notice of these facts since the administrative phase, they suffer no prejudice by the relation back of this claim.

The Defendants to now claim this action is time-barred—while they were simultaneously providing dead links and conflicting instructions—is a request for this Court to reward their own dilatory tactics. Under the Relation-Back Doctrine and the principles of Equitable Tolling, this Court should look past the technical labels of a non-lawyer and recognize that the core of this dispute has remained a constant, unresolved violation of ERISA's mandatory disclosure laws. The Amended Complaint does not add a *new* incident; it merely provides the factual detail (the December 2023 request and others) that defines the abuse already complained of. Therefore, it relates back under Rule 15(c)."

## **Legal**

**A. The Notice Pleading Standard Under Rule 8(a)(2)**. Under the Federal Rules of Civil Procedure, a complaint is not required to contain detailed factual allegations or an exhaustive list of every evidentiary date. Instead, Fed. R. Civ. P. 8(a)(2) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of this "Notice Pleading standard is to give the defendant fair notice of what the claim is and the grounds upon which it rests. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957). Defendant Wellmark's objection to

the omission of specific dates in the Amended Complaint (Def. Br. at 9) improperly seeks to hold the Plaintiff to a "fact pleading" standard that does not exist in federal court.

**B. Liberal Construction for Pro Se Litigants.** It is well-established that pleadings filed by *pro se* litigants must be "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). If a *pro se* complaint contains facts that suggest a plausible claim, it should not be dismissed for "inartful pleading" or technical defects. In this case, Plaintiff has clearly alleged the core elements of an ERISA document disclosure claim: (1) she is a participant; (2) she made a written request; and (3) the Administrator failed to comply.

**C. Motions to Dismiss are Disfavored.** A motion to dismiss under Rule 12(b)(6) should only be granted if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because the Plaintiff has presented evidence of a timely written request from February 27, 2024 (Exhibit 1), and a written admission from a co-Defendant that Wellmark is the responsible party (Exhibit 5), the Plaintiff has exceeded the "plausibility" threshold required to survive dismissal and proceed to discovery.

**D. Wellmark is a "De Facto" Administrator Under ERISA.** While Wellmark argues it is not the "named" administrator, ERISA liability for failure to provide documents under 29 U.S.C. § 1132(c)(1) extends to entities that act as the "De Facto Administrator." As shown in Plaintiff's Exhibit 2, Wellmark's HR department (Amanda Mommer) exercised sole control over the flow of plan information and directed Plaintiff's legal inquiries to the Wellmark legal team.

Wellmark cannot perform all the functions of an administrator—deciding which documents to release and which to withhold—and then claim it lacks the legal status of an administrator to avoid statutory penalties.

**E. Wellmark is Equitably Estopped from Denying its Status**. The doctrine of Equitable Estoppel prevents a party from taking a legal position that contradicts its previous representations if that change would harm the other party.

1. Lincoln National's Admission: In Plaintiff's Exhibit 5 Doc 22, the claims administrator explicitly stated: *"Wellmark Inc. is the plan sponsor and should be providing this information as they administer the plan."*
2. Wellmark's Conduct: Wellmark's HR department accepted the document request and partially fulfilled it (Exhibit 2), reinforcing the belief that they were the responsible party.

Wellmark and Lincoln collaborated to represent Wellmark as the administrator throughout the appeal process. Wellmark should be legally barred ("estopped") from changing this position now to escape litigation.

## Conclusion

Even if Lincoln decided on the claim, Wellmark had an independent duty as the Sponsor to give me the 'rulebook' (the contract or policy). By not doing so, they committed the 'ultimate' procedural abuse. Plaintiff argues that withholding the SPD is not a minor defect but a systemic abuse.

In my original filing, I explicitly complained about 'procedural abuse' and 'not knowing what proof was needed' [PDF 0.1.28]. These complaints are factually rooted in the same 2023-2024 document failures. Since Wellmark was on notice that I was contesting their procedural conduct, my specific penalty claim in February 2026 should relate back to October 2025, making it timely.

I was diligent. I emailed both Lincoln and Wellmark in February 2024 . Instead of providing the documents, they 'finger-pointed' for months. Under the doctrine of Equitable Tolling, the statute of limitations should not run against a pro se plaintiff who is being actively misled or bounced between two entities in a procedural shell game

As argued in *Hamilton* (2025), an employer's duty to provide the 'rulebook' (Policy) is absolute. It is not an 'irregularity' in a medical file; it is a fundamental breach of ERISA. Because this breach was mentioned as 'procedural abuse' in my first filing, it is a plausible claim that deserves to be heard on the merits, not thrown out on a technicality. Plaintiff argued that procedural abuse was her layman's term for withholding documents. On February 14, 2023 (Exhibit 2) delivery was a partial disclosure that proved Wellmark was withholding the rest of the rulebook that more clearly list limitation, in which Wellmark only provided in their motion to dismiss.

My February 27 email was not a 'follow-up' for the same info; it was a new, specific request for the missing pieces (5500 forms and most importantly the policy or contract) that I only realized were missing after seeing the partial set. Wellmark essentially provided Plaintiff with a cliff

notes version of the plan while keeping the real rulebook for themselves until filling in as Exhibits 25 2-3

Wellmark provided me with a 27-page summary (the SPD), but they kept the 50-page actual Policy (the 'Plan Document') hidden. Because the summary is not the plan, Wellmark's 'February 14 delivery' of the summary did not actually satisfy their legal duty to provide the Plan Document." Therefore, a new request was made see exhibit 1

As the Supreme Court held in *CIGNA Corp. v. Amara*, a summary is not the plan. Wellmark's legal duty under 29 U.S.C. § 1024(b)(4) is to provide the 'contract' and 'instruments under which the plan is operated.' By providing only a summary while holding back the 50-page contract until litigation, Wellmark committed a 'willful violation' that continues to this day. This would make the claim timely because the violation is "ongoing."

Wellmark argues my claim is time-barred by a two-year limit. However, Wellmark only provided the contract—the very document that contains the legal limitations—for the first time in their March 2026 Motion to Dismiss. I cannot be expected to follow a clock that is hidden inside a safe to which only the Defendant has the key. *Heimeshoff v. Hartford Life*, arguing that a contractual limitation is only enforceable if it is reasonable and clearly disclosed. Since it was withheld for two years, enforcing it now would be a "manifest injustice."

Wellmark sent a 27-page summary in February 2024. I immediately emailed back on February 27 specifically asking for the 'Contract. Wellmark ignored that specific request for the contract and only produced the 50-page Master Policy in docket 25. Because the Master Policy (the

'governing instrument') is the only document that truly defines my rights, Wellmark's failure to provide it in 2024 is a separate and ongoing violation.

In my original November 2025 complaint, I used the term 'procedural abuse' precisely because I didn't know the specifics of what was being withheld. Now that Wellmark has finally filed the 50-page policy, it is clear that the 'abuse' was the concealment of this document. Under Rule 15(c), the specifics I added in February 'relate back' because they identify the *source* of the procedural abuse I pleaded from the beginning. Wellmark never provided long-term policy as well.

**WHEREFORE,** Plaintiff Sharilyn Ervin prays that this Court: DENY Defendant Wellmark's Motion to Dismiss in its entirety; RECOGNIZE that the First Amended Complaint properly alleges two distinct forms of relief: a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) and a claim for statutory penalties under 29 U.S.C. § 1132(c)(1); AWARD statutory penalties against Defendant Wellmark in the amount of $110 per day, as requested in the First Amended Complaint, beginning on March 29, 2024 (30 days following the written request dated February 27, 2024), and continuing until such time as the Defendants furnish the requested instruments under which the plan is operated; and GRANT with such other and further relief as the Court deems just and proper.

/s/ Sharilyn Ervin

s/ Sharilyn Ervin

8790 EP True Parkway, #303
West Des Moines, IA 50266
Telephone-515-423-1809
Email- ervinsharilyn2009@yahoo.com Pro Se Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of March 2026, I electronically filed the foregoing using the ECF system which will send notification of such filing to the following individuals or counsel of record:

Benjamin P. Roach, AT0006588 Leslie C. Behaunek, AT0011563 NYEMASTER GOODE, P.C. 700 Walnut Street, Suite 1300 Des Moines, IA 50309 Telephone: 515-283-3100 Facsimile: 515-283-8045 Email: bproach@nyemaster.com lcbehaunek@nyemaster.com ATTORNEYS FOR DEFENDANT WELLMARK INC. GROUP DISABILITY INCOME PLAN

Brenda K. Wallrichs AT0008203 118 Third Avenue SE, Suite 700 P. O. Box 1927 Cedar Rapids, IA 52406-1927 Phone: (319) 365-1184 Fax: (319) 365-1186 E-mail: bwallrichs@lwclawyers.com Iwana Rademaekers 17304 Preston Road, Suite 800 Dallas, Texas 75252 Main: (214) 579-9319 Fax: (469) 444-6456 Email: iwana@rademaekerslaw.com ATTORNEYS FOR DEFENDANT THE LINCOLN NATIONAL LIFE INSURANCE COMPANY