UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF IOWA

CENTRAL DIVISION

| | |
|---|---|
| SHARILYN ERVIN,<br>Plaintiff,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, WELLMARK INC. GROUP DISABILITY INCOME PLAN, WELLMARK, INC. d/b/a WELLMARK BLUE CROSS AND BLUE SHIELD OF IOWA, and WELLMARK, INC. WELFARE BENEFIT WRAP-AROUND PLAN,<br>Defendant | Case No. 4:25-CV-00438-RGE-HCA<br><br>PLAINTIFF RESISTANCE TO (48)<br><br>WELLMARK INC. GROUP DISABILITY INCOME PLAN, WELLMARK INC., AND WELLMARK, INC. WELFARE BENEFIT WRAP AROUND PLAN'S BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER *Expedited Relief Requested*<br><br>REMOTE ORAL ARGUMENT REQUESTED* |

## IMPROPER MEET AND CONFER

Under Federal Rule of Civil Procedure 26(c)(1) and Local Rule 7(k), parties are required to confer in good faith to resolve discovery disputes before seeking judicial intervention Because Defendant's moving papers seek a total, blanket ban on all discovery rather than a compromise on specific questions, a verbal conference would have been entirely futile. Exhibit A Plaintiff has not noticed any depositions in this case, and the defense is prematurely asking the court for protection on nonexistent requests. The scheduling order also does not limit discovery to Lincoln only. (Doc 34) Wellmark's assertion that it was ambushed by these requests is flatly contradicted by the record. As explicitly documented in Plaintiff's April 14, 2026, email. Exhibit B

## PRELIMINARY STATEMENT

Defendant Wellmark, Inc. ("Wellmark") seeks a total, blanket ban on discovery by misapplying standard ERISA benefit-review restrictions to a statutory document penalty claim under 29 U.S.C. § 1132(c)(1). While discovery regarding benefit denials (Count I) is generally confined to the administrative record, the Eighth Circuit explicitly commands that a statutory penalty claim (Count II) requires the Court to evaluate the administrator's external conduct, responsiveness, and good faith (*Chesnut v. Montgomery*, 307 F.3d 698, 704 (8th Cir. 2002)). Because a static medical file is inherently silent on these behavioral factors, narrow extrinsic discovery is mandatory. There are structurally contradictory positions taken under oath by the corporate Defendants, Plaintiff respectfully requests an expedited hearing/oral argument to clarify these core administrative gaps for the Court.

To ensure proportionality under FRCP 26(b)(1), Plaintiff has narrowed her discovery requests strictly to the specific factual disputes injected into this record by the Defendants. Plaintiff would have been open to negotiating if the defense had scheduled a conference. Plaintiff has also sent this new list to the Defendants. Exhibit C

## ARGUMENTS AND AUTHORITIES

### I. Discovery is Mandatory to Evaluate the Core Conduct and Responsiveness Factors Established by the Eighth Circuit

In *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 947–48 (8th Cir. 1999), the Eighth Circuit emphasized that a court exercises its discretion over statutory penalties by evaluating the administrator's conduct and responsiveness. Because a statutory penalty claim evaluates the

administrator's conduct rather than a medical determination, the court must look at facts entirely outside that administrative record.

The daily fine amount has been updated by Department of Labor regulations from the original statutory $100 up to $110 per day. Under 29 U.S.C. § 1024(b)(4), "If within thirty days a plan administrator 'fails or refuses to comply with a request' from a participant for information that the administrator is required by ERISA to furnish, the court has discretion to award the participant statutory damages of up to $100 per day [now $110] for each day of violation." *Wilson v. Moog Automotive, Inc. Pension Plan and Trust for U.A.W. Employees*, 193 F.3d 1004, 1010 (8th Cir. 1999) (quoting 29 U.S.C. § 1132(c)(1)(B)).

The explicit "purpose of ERISA's statutory penalty is to punish noncompliance." *Chesnut v. Montgomery*, 307 F.3d 698, 704 (8th Cir. 2002) (citations omitted). Thus, the plan administrator's good faith and the absence of harm to the beneficiary are relevant in deciding whether to award a statutory penalty. *Id.*

Although an "employer's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty," *Chesnut v. Montgomery*, 307 F.3d 698, 704 (8th Cir. 2002), "neither [a defendant's] good faith nor the absence of actual injury to [the plaintiff] precludes the award of a statutory penalty." *Id.* 703.

Because a judge cannot determine a fair and proportionate punishment without analyzing the administrator's conduct, discovery regarding the handling of document requests is appropriate under Federal Rule of Civil Procedure 26(b)(1). While discovery is heavily restricted in traditional ERISA benefits litigation, courts routinely permit extrinsic discovery for procedural challenges and penalty claims where the administrative record is inherently silent or incomplete.

Plaintiff further presents the fact that Wellmark sent a policy that lists the wrong claim administrator and year 2012 to her 2024 request. Under 29 U.S.C. § 1024(b)(1), plan administrators are legally required to integrate modifications and completely update the Summary Plan Description (SPD) at least every 5 years (or every 10 years if no changes occur). Sending a 12-year-old document violates this mandate. The 2012 document lists the wrong, outdated claims administrator for requests made in 2024. Per 29 CFR § 2520.102-3, an SPD must accurately detail the current identity and contact information of the plan and claims administrators. Exhibit D

Under 29 C.F.R. § 2560.503-1, an administrator must maintain reasonable claim procedures. Providing an outdated, inaccurate roadmap is a per se breach of the fiduciary duty of disclosure under 29 U.S.C. § 1104(a)(1)(B), because it misleads the participant on where to send active appeal documents. Because the 2012 document listed a completely different company (Liberty Mutual), any reasonable employee would assume Wellmark sent them the wrong paperwork in response to a 2024 request. Plaintiff notes Wellmark still refuses even after the complaint was filed to send documents like the Form 5500 even though Plaintiff has asked in 2 email requests. Exhibit I. If actual documents are not received in the process, Lincoln and Wellmark will continue to remain vague on their fiduciary duties. This further proves the Defendants' continued defiance following federal law.

## LEGAL

While Lincoln technically signed the denial letter, Wellmark funded the STD benefit and maintained ultimate fiduciary authority over the plan's asset. Wellmark cannot insulate itself from a MetLife v. Glenn conflict of interest by hiring a third-party vendor (Lincoln) to act as a

'rubber stamp' for denials that directly save Wellmark's corporate treasury money. Wellmark Paid the STD benefits. Wellmark attempts to mislead the courts that STD is not plead however at the time of the failure to provide documents occurred Plaintiff was in the middle of an STD appeal and needed the policies.

<u>Defendants' Conflicting Pleadings Create an Operational "Shell Game" Requiring Factual Clarification Exhibit E</u>

Under 29 U.S.C. § 1132(c)(1), statutory document penalties can only be assessed against the designated "Plan Administrator" under ERISA § 3(16)(A). Plaintiff's Complaint explicitly alleged that Wellmark was the Plan Administrator.

In their respective Answers, the Defendants have executed a classic corporate runaround:

- Wellmark's Answer (Doc. 43, ¶ 5): Wellmark explicitly denies that it is the "Plan Administrator," admitting only to being the "Plan Sponsor."
- Lincoln's Answer (Doc. 42, ¶ 4, 5): Lincoln explicitly denies that it is the "Plan Administrator," admitting only to being a claims administrator "**at certain times.**"

Because both corporate entities have denied holding the statutory title of Plan Administrator, yet Wellmark's own outdated Summary Plan Description (SPD) directs participants to submit document requests to the "Plan Administrator" (Exhibit D), a critical factual ambiguity exists. Plaintiff is legally entitled to discover the internal corporate agreements and delegation instruments to identify which entity held the legal obligation to furnish plan documents during the specific period at issue.

Wellmark Waived Protections by Injecting Affirmative Factual Assertions and the O'Neill Declaration

Wellmark submitted the sworn declaration of in-house counsel Bryan O'Neill (Exhibit F) to assert an administrative defense of "good faith confusion." Specifically, Wellmark claims under penalty of perjury that it:

1. Withheld the Form 5500 Series because it was "available online."
2. Did not understand what Plaintiff meant by the statutory term "contract."
3. Wellmark submitted other affirmative defenses concerning exhaustion-Doc. 42

29 U.S.C. § 1024(b)(4), which explicitly states administrators must furnish copies of the "latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." The term 'contract' is not ambiguous; it is a verbatim, explicit statutory category dictating mandatory disclosure under 29 U.S.C. § 1024(b)(4). A designated statutory Plan Administrator cannot claim 'good faith confusion' over the literal text of the federal statute it is legally required to operate under

Because Wellmark and Lincoln were giving Plaintiff the runaround regarding who the true statutory "Plan Administrator" was, the Form 5500 was the only definitive, legally binding document filed with the federal government that could verify the true identity of the plan's fiduciaries and funding structure. The lack of documents forced Plaintiff to jump through bureaucratic hoops, face prolonged administrative delays, or navigate an appeal completely blind The company’s failure to provide the latest plan instruments forced her to waste precious time fighting standard procedural denials, filing state/federal regulatory complaints, and guessing how to properly structure an extensive appeal. The failure to provide accurate information caused

financial harm, medical delays, and distress. This is not an isolated event with 1 or 2 requests as Plaintiff made several requests to both defendants. If Plaintiff had the documents, she could have challenged Lincolns appeal process that was later determined were outside of the plan requirements. Wellmark's intent is in writing Exhibit J. While Plaintiff wants to make clear, the new request was made later than 2023. Exhibit J shows the intent was not following federal laws. The Eighth Circuit holds that while an administrator’s good faith is a relevant factor in calculating a penalty, an honest administrative mistake does not preclude the award (*Chesnut*, 307 F.3d at 703). Plaintiff has an absolute right under FRCP 26 to test whether Wellmark’s professed "confusion" was genuine or an institutional policy of non-responsiveness.

Plaintiff is legally entitled to discover:

- Internal communications regarding the processing of Plaintiff's explicit February 27, 2024, statutory demand. Exhibit G
- Whether Wellmark maintains internal guidelines, authorizing staff to withhold documents on the basis that they are "internal" or "online."

<u>Plaintiff's Short-Term Disability (STD) Check Stubs Establish a Prima Facie "Rubber Stamp" Conflict of Interest</u>

Wellmark argues that no structural conflict of interest exists under *MetLife v. Glenn* because Lincoln evaluated the medical claims. However, Plaintiff’s financial records (Exhibit H) conclusively prove that Wellmark funded and issued benefit checks for the Short-Term Disability Plan, while Lincoln merely acted as the third-party evaluator.

This split-role structure creates a classic "Rubber Stamp" scenario. Wellmark maintains a direct financial incentive to minimize payouts from its corporate treasury. By withholding the governing plan documents from the Plaintiff while plaintiff was actively navigating a critical STD appeal window, Wellmark acted in its own financial self-interest. Plaintiff is entitled to targeted discovery into the financial incentives and service agreements between Wellmark and Lincoln.

Plaintiff also asserts Lincoln has not objected to the discovery request that were sent on May 19, 2026. Plaintiff did not draft the final scheduling order nor file it. Plaintiff objects to the additional claims in Defenses Motion as no meet and confer was had to discuss these theories.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court DENY Defendant Wellmark's Motion for a Protective Order, lift the stay on discovery, and order Wellmark to fully respond to Plaintiff's Interrogatories, Requests for Production, and Requests for Admission.

/s/ Sharilyn Ervin

## CERTIFICATE OF SERVICE

I hereby certify that June 1, 2026, I presented the foregoing filing and uploading into the ECF system, which will send notification of such filing to the following:

Sharilyn Ervin 8790 EP True Parkway, #303 West Des Moines, IA 50266
PRO SE PLAINTIFF

Iwana Rademaekers Law Offices of Iwana Rademaekers, P.C. 17304 Preston Road, Suite 800 Dallas, TX 75252 Telephone: (214) 579-9319 Facsimile: (469) 444-6456 Email: iwana@rademaekerslaw.com Admitted Pro Hac Vice And Brenda K. Wallrichs Lederer Weston Craig PLC 118 Third Avenue SE, Suite 700 PO Box 1927 Cedar Rapids, IA 52406-1927 Telephone: (319) 365-1184 Facsimile: (319) 365-1186 Email: bwallrichs@lwclawyers.com
ATTORNEYS FOR DEFENDANT THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

Benjamin P. Roach, AT0006588 Leslie C. Behaunek, AT0011563 NYEMASTER GOODE, P.C. 700 Walnut Street, Suite 1300 Des Moines, IA 50309 Telephone: 515-283-3100 Facsimile: 515-283-8045 Email: bproach@nyemaster.com lcbehaunek@nyemaster.com ATTORNEYS FOR DEFENDANT WELLMARK INC. GROUP DISABILITY INCOME PLAN