EXHIBIT C

N THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF

IOWA CENTRAL DIVISION

| | |
|---|---|
| SHARILYN ERVIN,<br><br>Plaintiff(s),<br><br>vs.<br><br>LINCOLN NATIONAL LIFE INSURANCE COMPANY and THE WELLMARK, INC. GROUP DISABILITY INCOME PLAN, WELLMARK, INC. (d/b/a Wellmark Blue Cross and Blue Shield of Iowa); and WELLMARK, INC. WELFARE BENEFIT WRAP-AROUND PLAN<br><br>Defendants. | No. 4:25-cv-00438-RGE-HCA<br><br>PLAINTIFF'S INTERROGATORIES, ADMISSIONS AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT WELLMARK INC |

PLAINTIFF'S INTERROGATORIES, ADMISSIONS, AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT WELLMARK INC

## DEFINITIONS

For the purposes of these discovery requests, the terms "Defendant" or "you" means Wellmark Inc (hereinafter "Wellmark") and includes any of its subsidiary corporations, parent corporations, or affiliated corporations, and includes its agents, employees, managers, officers, board members, legal representatives, successors and assigns.

The term "Plaintiff' means the named Plaintiff in the captioned lawsuit.

The term "LTD" means long-term disability.

The phrase "LTD Plan" refers to the Group Disability Income Policy Number GF3-840-435301-02 and Wellmark, Inc. Short Term Disability Plan

The term "policy" means the Group Disability Income Policy Number GF3-840-435301-02 and Wellmark, Inc. Short Term Disability Plan

The term "document" means all records that preserve information of any kind, including but not limited to: photographs, videos, audio tapes, e-mails, memos, letters, accounting records of any kind, microfilm, computer data, all forms of memorializing verbal communications~ and all other forms of written or electronic communication.

The term "claim" or "claims" means any claim for disability benefits submitted by Plaintiff to Defendant under the LTD Plan or policy, including Long Term Disability (LTD) Benefits Wellmark, Inc. Claim #: 15665514 and 14973271

The term "appeal" or "appeals" means any administrative appeal submitted to Defendant by Plaintiff, or on behalf of Plaintiff, related to Defendant's denial of disability benefits.

The term "medical reviewer" refers to any person, Lincoln, or organization employing medical reviewers, that reviewed any of the medical records concerning the Plaintiff or was hired to provide a medical or functional opinion on behalf of the Defendant regarding the Plaintiff.

The term "vocational reviewer" means any person, Rehabilitation Specialist, Vocational Case Manager, Lincoln, or organization employing vocational reviewers, that reviewed any of the medical records, medical reviewers' opinions, or any records pertaining to the Plaintiff for vocational purposes, or was hired to provide a vocational opinion, review, or analysis on behalf of the Defendant pertaining to the Plaintiff in this action.

## Interrogatories

1. Identify the specific "documents governing the operation of the Plan" referenced in the "YOUR RIGHTS UNDER ERISA" section on Page 24 of Wellmark's Short-Term Disability (STD) and Long-Term Disability (LTD) Summary Plan Descriptions.

Response

2. State whether Wellmark, Inc. considers the formal group insurance policy executed with the insurance carrier to be a binding "contract" or an "instrument under which the plan is operated" as outlined in 29 U.S.C. § 1024(b)(4).

Response

3. Identify any training, legal education, or corporate guidance provided to Bryan O'Neill regarding an administrator's disclosure duties under 29 U.S.C. § 1024(b)(4) prior to his execution of the April 6, 2026, declaration.

Response

4. Identify any instance in the last five years where Wellmark's legal or benefits department used the word "contract" to describe its administrative service agreements, group policy insurance terms, or wrap-around plan setups.

Response

copy of a formal directive

5. State whether Defendant Wellmark, Inc. maintains any written policy, human resources guidelines, or training materials that authorize a Human Resources Benefit Analyst, including Sheri Ragan, to withhold governing plan documents from a participant on the basis that they are "internal Wellmark documents."

Response

6. Identify every plan document, policy, instrument, or summary plan description (SPD) that was deliberately omitted or otherwise not included in the partial document packet Wellmark sent to Plaintiff on February 14.

Response

7. State the exact date, method of delivery, and tracking information for the document production Wellmark claims it sent to Plaintiff's attorney following the February 27 request and identify which specific legal matter Wellmark believed that attorney was handling.

Response

8. State the specific corporate or legal justification Wellmark relied upon to refuse Plaintiff's written request for the Form 5500 Series, given that Page 24 of Wellmark's

own document explicitly promises that participants shall be entitled to obtain copies *"upon written request to the Plan Administrator."*

Response

9. Describe any internal communications, corporate meetings, or file reviews that occurred at Wellmark as a direct result of the complaints Plaintiff filed with the Iowa Insurance Division and the Employee Benefits Security Administration (EBSA) in February.

Response

10. State the exact date that Liberty Mutual ceased serving as the Claims Administrator for the Wellmark, Inc. Short-Term Disability Plan and state the exact date that Lincoln Financial Group assumed those duties.

Response

11. Identify by date and title any Summary of Material Modifications (SMM) or updated Summary Plan Description (SPD) generated by Wellmark to inform participants that Lincoln Financial Group had replaced Liberty Mutual as the administrator.

Response

12. Identify the employee who authorized sending the 2012 SPD (naming Liberty Mutual) to Plaintiff in 2024, and state whether that employee knew the document contained obsolete administrator information.

Response

13. State whether Wellmark ever distributed a corrected, updated version of this SPD to active employees and plan participants between the years 2012 and 2026 to accurately reflect the active claims administrator. Provide that date

Response

14. State the date Wellmark provided the Form 500 to Plaintiff.

    Response

15. State the date Wellmark provided copies of documents governing the operation of the Plan to Plaintiff

    Response

16. State the exact date on which Wellmark last *"furnished"* Plaintiff with a copy of the Summary Annual Report (SAR) as mandated by the clause stating the Plan Administrator is *"required by law to furnish each participant with a copy of this summary annual report.*

    *Response*

17. Identify the specific Plan Fiduciary who reviewed Sheri Ragan's December 2023 email refusal and determined that withholding plan documents from a terminated employee

complied with the fiduciary duty to operate the plan *"prudently and in the interest of you and other Plan participants.*

Response

18. State the exact reason Wellmark failed to deliver the "contract, trust agreement, or other instruments" by the requested March 27, 2024, deadline, despite having the exact statutory definitions provided directly in the text of Plaintiff's email.
Response

19. Identify the specific Wellmark employee who drafted and submitted the corporate response to the Iowa Insurance Division regarding Case 120981 prior to March 4, 2024.
Response

20. State the exact legal and factual basis supporting Wellmark's Affirmative Defense No. 1 that Plaintiff's claims regarding her December 2023 document request are time-barred under the applicable statute of limitations
Response

21. Identify the specific "third parties" referenced in Wellmark's Affirmative Defense No. 5 for whose acts or omissions Wellmark claims it owes no legal responsibility regarding the production of plan documents---DOC 43 PG 14
Response

22. State in detail all facts, dates, occurrences, and instances of conduct by Plaintiff that support Defendant’s contention in Affirmative Defense No. 7 that Plaintiff’s claims are barred by estoppel, laches,

unclean hands, waiver, failure to mitigate, mistake, release, and/or failure to cooperate
Response

## Request for Documents

1. Produce all internal mail logs, email servers, customer service tickets, and HR portal records documenting the receipt of Plaintiff's initial December 2023 written request for plan documents.

Response

2. Produce a complete, unredacted copy of the letter and all attached documents sent by Wellmark to Plaintiff on February 14, along with any internal notes detailing why a partial or incomplete packet was chosen.

Response

3. Produce all cover letters, emails, courier receipts, or electronic service confirmations proving that Wellmark delivered the requested plan documents to Plaintiff's attorney following the February 27 request.

Response

4. Produce all emails, internal memos, or correspondence discussing Plaintiff's request for Form 5500, specifically including any messages documenting the decision to withhold it because it was located online.

Response

5. Produce all files, letters, responses, and submissions exchanged between Wellmark, Inc. and the Iowa Insurance Division, as well as between Wellmark and the U.S. Department of Labor (EBSA), regarding the complaints Plaintiff filed in February.

Response

6. Produce Wellmark's internal human resources or benefits compliance manuals, training guides, and written protocols in effect during 2023 regarding how employees must process document requests from terminated plan participants.

Response

7. Produce the complete, unredacted Form 5500 (Annual Report) for the LTD Plan, including all attached schedules and audited financial statements, for the calendar years of 2022 and 2023.

Response

8. Produce the complete Group Long-Term Disability Insurance Policy and contract (including all riders, amendments, and endorsements) executed between Wellmark, Inc. and The Lincoln National Life Insurance Company in effect at the time of Plaintiff's disability claim.

Response

9. Produce the latest updated Summary Plan Description (SPD) for the LTD Plan in effect during the calendar year 2023.

Response

10. Produce the formal Plan Document or master trust agreement under which the Wellmark, Inc. Group Disability Income Plan was established or is operated.

Response

11. Produce any trust agreements or funding documents related to the payment of benefits or maintenance of assets under the LTD Plan in effect during 2023.

Response

12. Produce all internal human resources directives, benefits administration policies, or written guidelines regarding the handling of plan document requests made by terminated or former employees.

Response

13. Produce any internal memorandum, email, or policy statement authorizing Wellmark personnel to withhold paper or electronic copies of plan documents on the basis that the participant can access them online.

Response

14. Produce the master group insurance policy contract or administrative services contract establishing the STD plan referenced in Paragraph 10 of Bryan O'Neill's declaration.

Response

15. Produce the internal drafts, compliance files, and corporate approvals for the "YOUR RIGHTS UNDER ERISA" section found on Page 24 of the Plan's SPD.

Response

16. Produce any internal Wellmark training manuals, glossaries, or claims administration handbooks defining the terms "contract," "plan document," or "governing instrument."

Response

17. Produce all emails, internal messages, or draft records reviewed or generated by Bryan O'Neill between February 1, 2024, and April 6, 2026, regarding Plaintiff's request for a "contract."

2024

Response

about plainitff request for documents and std payment

18. All email and team messages about, or discussing Plaintiff from 2023 until present

Response

Produce all non-privileged emails and internal team messages (including Microsoft Teams or Slack logs) from 2023 to the present day exchanged among Sheri Ragan, Bryan O'Neill, Kathryn Espe, Lisa Scaglione, Amanda Mommer, or Valora James regarding Plaintiff's written requests for plan documents or the statutory compliance deadlines associated with those requests."

19. Policy that states when employee goes on LTD, they must be terminated

Response

20. Produce the executed corporate agreement, transition timeline, or contract between Wellmark, Inc. and Lincoln Financial Group showing when Lincoln took over claims administration from Liberty Mutual.

Response

21. Produce any and all SMMs, addendums, riders, or corporate notices drafted or distributed by Wellmark regarding the transition of claims operations from Liberty Mutual to Lincoln Financial Group.

Response

22. Produce copies of any plan amendments or updated electronic SPD filings Wellmark submitted to the Department of Labor (EBSA) concerning changes to the plan's designated claims administrator between 2012 and 2024.

Response

23. Produce all internal emails, human resources memos, or legal department messages discussing the fact that Wellmark was distributing a 2012 SPD containing obsolete Liberty Mutual contact information to terminating or disabled employees.

Response

24. Produce all internal workflows or processing logs demonstrating how Wellmark's benefits department fulfills a participant's request when a participant exercises their right to *"Obtain, upon written request to the Plan Administrator, copies of... the latest annual report (Form 5500 Series)*

*Response*

25. Produce any internal audits, compliance reports, or legal memoranda generated by Wellmark after December 2023 investigating whether the company breached its stated duty to act *"prudently and in the interest of"* plan participants regarding document disclosures.

Response

26. Produce all internal human resources files, email strings, log entries, or notes documenting Plaintiff's alleged "failure to cooperate" with Wellmark between December 1, 2023, and the present date.

Response

27. Produce a true and exact copy of any signed contract or separation agreement containing the "release" language Wellmark claims bars Plaintiff's current claims in this lawsuit

Response

28. Produce any and all documents, correspondence, or tangible evidence that Wellmark intends to introduce at trial to support its affirmative defenses of estoppel, waiver, mistake, or laches.

Response

29. Produce all internal human resources logs, emails, or system notes documenting the decision to stop processing Plaintiff's direct requests because her file was "now being handled through the Iowa Civil Rights Commission."

Response

30. Produce the complete, unredacted written response, including all attachments and emails, that Wellmark and Lincoln sent to the Iowa Insurance Division in connection with Case 120981.

Response

31. Produce any non-privileged, internal human resources tracking logs or ticketing notes showing whether Wellmark consulted legal counsel or plan fiduciaries regarding their exposure to the $110/day statutory penalty mentioned in Plaintiff's email.

Response

## Admissions

1. Admit that on or before December 31, 2023, Defendant Wellmark, Inc. was aware that federal law under 29 U.S.C. § 1132(c)(1) permits a court to impose statutory penalties of up to $110 per day against a plan administrator for failing to timely produce requested plan documents.

Response

2. Admit that Defendant Wellmark, Inc. received Plaintiff's email explicitly detailing the $110-a-day statutory penalty under ERISA.

Response

3. Admit that Page 24 of Wellmark’s own Short-Term Disability Summary Plan Description explicitly informs plan participants that a court may require the Plan Administrator to pay up to $110 a day if materials are not received within 30 days of a written request.

Response

4. Admit that Defendant Wellmark, Inc. did not provide Plaintiff with a copy of the complete Form 5500 Series within 30 days of receiving her written request.

Response

5. Admit that Defendant Wellmark, Inc. possesses no documentation demonstrating that its failure to provide the requested contract or Form 5500 by March 27, 2024, was caused by reasons entirely beyond its corporate control.

Response

6. Admit that the 27-page document delivered to Plaintiff on February 14, 2024, did not contain the complete contract executed between Wellmark, Inc. and its disability insurance carrier (pp. 9-10).

Response

7. Admit that Wellmark, Inc. turned off Plaintiff's internal company network and corporate intranet link access immediately upon her employment termination (pp. 7-8).

Response

8. Admit that Wellmark, Inc. did not mail or electronically deliver a physical copy of the Form 5500 Series return to Plaintiff within 30 days of her February 27, 2024 written request (pp. 9, 12).

Response

9. Admit that Wellmark, Inc. is designated as the formal "Plan Administrator" as defined by ERISA § 3(16)(A) for the Wellmark, Inc. Short-Term Disability Plan (pp. 3, 8).

Response

10. Admit that on or before December 31, 2023, Defendant Wellmark, Inc. was aware that federal law under ERISA requires a plan administrator to update a Summary Plan Description (SPD) or issue a Summary of Material Modifications (SMM) when there is a material change to the designated claims administrator

Response

11. Admit that the Summary Plan Description Wellmark, Inc. delivered to Plaintiff on February 14, 2024, bore an effective date of April 1, 2012.

Response

12. Admit that the Summary Plan Description Wellmark, Inc. delivered to Plaintiff on February 14, 2024, listed Liberty Mutual as the active Claims Administrator.

Response

13. Admit that on February 14, 2024, Liberty Mutual was no longer the active Claims Administrator for the Wellmark, Inc. Short-Term Disability Plan.

Response

14. Admit that on February 14, 2024, The Lincoln National Life Insurance Company was the active entity evaluating claims under the plan.

Response

## VERIFICATION

I, [ ], declare under penalty of perjury under the laws of the United States of America that I am an authorized representative of Defendant, Wellmark Inc; that I am authorized to make this verification on its behalf; that I have read the foregoing Defendant's Answers to Plaintiff's First Set of Interrogatories and know the contents thereof; and that the answers stated therein are true and correct to the best of my knowledge, information, and belief based upon records maintained by the company.

Dated this _____ day of ________________, 2026.

By: _______________________________

**[Name]**

Title:
Authorized Representative of Wellmark Inc

CERTIFICATE OF SERVICE I hereby certify that on the 19th day of May 2026, I electronically emailed to the following individual or counsel of record:

Benjamin P. Roach, AT0006588 Leslie C. Behaunek, AT0011563 NYEMASTER GOODE, P.C. 700 Walnut Street, Suite 1300 Des Moines, IA 50309 Telephone:

515-283-3100 Facsimile: 515-283-8045 Email: bproach@nyemaster
lcbehaunek@nyemaster