# Wellmark, Inc. Short Term Disability Plan

# Summary Plan Description

Effective as of April 1, 2012

## Contact Information

| | |
|---|---|
| **Plan Administrator:** | Wellmark, Inc. |
| **Address and Telephone #:** | 1331 Grand Avenue, Station 1W037<br>Des Moines, IA 50309-2901<br>(515) 376-4848 or 1-800-577-9557 |
| **Claims Administrator:** | Liberty Mutual |
| **Address and Telephone #:** | P.O. Box 7206 London, KY 40742<br>(800) 210-0268 |

# I. TABLE OF CONTENTS

**I. TABLE OF CONTENTS....................1**

**II. OVERVIEW OF PLAN....................2**

**III. SUMMARY OF BENEFITS....................3**

**IV. ELIGIBILITY....................6**

**V. BENEFIT PROVISIONS....................7**

**VI. EXCLUSIONS AND LIMITATIONS....................11**

**VII. CLAIM AND APPEAL INFORMATION....................15**

**VIII. DEFINITIONS....................20**

**IX. ERISA PROVISIONS....................23**

# II. OVERVIEW OF PLAN

The Wellmark, Inc. Short Term Disability Plan is an employee benefit plan (“Plan” or “Short Term Disability Plan”) sponsored by Wellmark, Inc. that provides short-term disability benefits to replace a portion of your income in the event a sickness, accident, pregnancy or injury prevents you from working for a period of time. This Plan does not provide benefits for occupational injuries or sicknesses. Detailed information about your eligibility for coverage, when and what benefits are payable, how to file a claim, and other features of this Plan are contained in this document, which is referred to as your booklet or your SPD.

The Plan is funded from our general assets. We have engaged Liberty Mutual to provide certain administrative claims handling services for the Plan. Neither Liberty Mutual nor any of its affiliates or related insuring entities insures the benefits under this Plan, or has any responsibility to fund benefits under the Plan.

We reserve the right to modify, amend, restate, suspend or terminate, in whole or in part, any of the provisions of this Plan at any time for any reason. When making a benefit determination under the Plan, the Plan Administrator has the discretionary authority to determine your eligibility for benefits and to interpret and enforce the terms and provisions of the Plan. We may delegate some or all of this authority to Liberty Mutual, the Claims Administrator, at any time.

“We”, “us”, and “our”, as used in this SPD, refers to Wellmark, Inc., the Employer. The Employer is the Plan’s sponsor and the Plan Administrator.

If you do not understand any of the terms in this document, or desire more information, you should contact us by using the contact information on the cover page. Many of the terms used in this booklet are defined in the Definitions Section. Be sure to read all the definitions so that you will understand the Plan fully.

# III. SUMMARY OF BENEFITS

This Summary of Benefits highlights many of the features of this Short Term Disability Plan. Refer to each section for a more complete description of benefits under the Plan.

**ELIGIBLE GROUP:**

To be eligible for benefits, you must be a member of the following eligible group:

All regular full-time or part-time employees (as defined in the Definitions section) in active employment in the United States with the Employer working at least 20 hours per week. Temporary and seasonal workers are not eligible Employees and are excluded from coverage.

**WAITING PERIOD:**

If you are an eligible employee, participation in the Plan begins on the first day of the month following the 90th day of continuous active employment in an eligible group. This period is referred to as the waiting period.

**REHIRE IN AN ELIGIBLE GROUP:**

If your employment ends and you are rehired by us in an eligible group within 6 months, your previous employment while in an eligible group will apply toward the waiting period. If you are rehired after 6 months, you will be treated as a new hire.

This rehire rule will also apply if you cease to be in an eligible group and within 6 months you become an eligible employee again.

All other Plan provisions apply.

**ELIMINATION PERIOD:**

7 consecutive calendar days for injury and/or sickness

1 business day for an approved treatment plan for the following:

Kidney Dialysis

Chemotherapy or Radiation

Benefits are payable for periods beginning the day after the elimination period is completed.

**WEEKLY BENEFIT AMOUNT:**

60% of weekly earnings while disabled after the elimination period. There is no maximum weekly benefit.

Your benefit payment will be reduced by deductible sources of income and, in some cases, by the income you earn while disabled.

**WEEKLY EARNINGS:**

Your base salary only and does not include bonus, overtime, commissions, non-cash compensation or any other extraordinary compensation.

**MAXIMUM PERIOD OF PAYMENT:**

180 days from your date of disability

**OCCUPATIONAL INJURIES:**

The Short Term Disability Plan does not cover disabilities due to an occupational (work-related) sickness or injury.

**WHO PAYS FOR THE COST OF THE PLAN?**

Wellmark, Inc. pays the cost of the Plan. No contributions from employees are required.

**WHAT IS MEANT BY "Active Employment"?**

You are in “active employment” or “actively at work” for purposes of this Short Term Disability Plan if you are:

1. Paid regular earnings and classified as a W-2 employee on Wellmark, Inc. payroll; and
2. For at least the minimum number of hours shown in the Plan Specifications perform work:
   a. at Wellmark, Inc.’s usual place of business; or
   b. at a location to which Wellmark, Inc.’s business requires you to travel.

You will also be considered actively at work if you were actually at work on the day immediately preceding –

- a weekend (except where one or both of these days are scheduled work days);
- holidays (except when the holiday is a scheduled work day);
- paid vacations;
- any non-scheduled work day;
- an excused leave of absence (except medical leave for your own disabling condition and lay-off);
- an emergency leave of absence (except emergency medical leave for your own disabling condition); and
- any other leave allowed under state or federal law (e.g., FMLA) (except leave for your own disabling condition).

# IV. ELIGIBILITY

**WHEN ARE YOU ELIGIBLE FOR COVERAGE?**

If you are in an eligible group, the date you are eligible for coverage is the day you complete your waiting period.

**WHEN DOES YOUR COVERAGE BEGIN?**

You will be covered at 12:01 a.m. at our primary place of business on the date you are eligible for coverage if you are in active employment on such date.

**WHAT IF YOU ARE ABSENT FROM WORK ON THE DATE YOUR COVERAGE WOULD NORMALLY BEGIN?**

If you are not actively at work due to injury or sickness, your coverage will begin on the date you return to active employment.

**WHEN WILL CHANGES TO YOUR COVERAGE TAKE EFFECT?**

Once your coverage begins, any increased or additional coverage will take effect immediately if you are actively at work. Otherwise, any increased or additional coverage will begin on the date you return to active employment.

**WHEN DOES YOUR COVERAGE END?**

Your coverage under the Plan ends on the earliest of:

- the date the Plan is terminated by us;
- the date you are no longer in an eligible group or no longer an eligible employee;
- the date your eligible group is no longer covered;
- the date you retire;
- the date your employment terminates; or
- the date of your death.

**WHAT HAPPENS IF YOU ARE ON A LAYOFF OR LEAVE?**

If you are laid off, then Short Term Disability Plan coverage will terminate. If you return from a layoff, coverage will re-commence according to the rehire and new hire provisions.

If you are on leave and you are still considered actively at work, your coverage will continue. For example, if you are on vacation or on FMLA leave, your coverage will continue during that time. See the active employment provisions in Section III for determining actively at work.

# V. BENEFIT PROVISIONS

## WHEN ARE YOU CONSIDERED DISABLED?

You are disabled when the Claims Administrator determines that due to your **sickness** or **injury**:

- you are unable to perform the **material and substantial duties** of **your regular occupation**; and
- you are not working in any occupation.

The Plan will continue to pay you a disability benefit:

- even if you begin performing one or more of the material and substantial duties of your regular occupation; and
- as long as you have a 20% or more loss in weekly earnings due to the same sickness or injury.

The loss of a professional or occupational license or certification does not, by itself, constitute disability.

Maternity (normal delivery and c-section): You will be considered disabled for a minimum period of six weeks beginning on the date of your delivery, unless you return to work prior to the end of the six weeks. Complications during pregnancy or delivery could constitute an extended benefit duration and must be medically certified.

The Claims Administrator may require you to be examined by a physician, other medical practitioner and/or vocational expert of our or its choice. This examination will be at no cost to you and can be required as often as it is reasonable to do so. We may also require you to be interviewed in person by us or our representative.

## HOW LONG MUST YOU BE DISABLED BEFORE YOU ARE ELIGIBLE TO RECEIVE BENEFITS?

You must be continuously disabled through your **elimination period** in order to be eligible for benefits. A new elimination period will be applied to each period of disability, except as otherwise specifically provided below.

## WHEN WILL YOU BEGIN TO RECEIVE PAYMENTS?

You will begin to receive bi-weekly payments after your claim is approved, providing the elimination period has been met. After the elimination period, if you are disabled for less than one week, you will receive payment for a prorated portion of a full week’s benefit.

## HOW MUCH WILL YOUR BENEFIT BE UNDER THE PLAN?

The amount of the benefit payable under the Plan is determined as follows:

1. Multiply your **weekly earnings** by the weekly benefit percentage amount as stated in the Summary of Benefits.
2. Subtract from your gross disability payment any **deductible sources of income**.

The amount figured in Item 2 is your **weekly payment**. This amount is prorated for any period of disability that is less than a week.

## WHAT WILL WE USE FOR WEEKLY EARNINGS IF YOU BECOME DISABLED DURING A LEAVE OF ABSENCE?

If you become disabled while you are on a leave of absence and are covered under this Plan, we will use your weekly earnings in effect just prior to the date your absence begins.

## WHAT BENEFIT WILL YOU RECEIVE IF YOU ARE WORKING AND DISABLED?

If you are continuously partially disabled, we will pay you as follows:

1. 60% of your WEEKLY EARNINGS for that week and your regular pay relating to the full-time hours worked for that week; minus
2. any sources of income that offset your benefits.

We will adjust your weekly payment based on your disability earnings.

The Plan Administrator has the discretionary authority to determine whether you are eligible for benefits and the amount of those benefits.

## WHAT SOURCES OF INCOME WILL REDUCE MY STD BENEFITS?

Other sources or payments of income that you receive with respect to your disability will reduce your gross disability payment. Other sources of income include the following:

- earned income from other employment, including self-employment, from any source,
- unemployment compensation, state disability benefits, other legislated benefits for disability, retirement or unemployment or other state compulsory benefit act or law,
- insurance or other recoveries relating to your disability (whether or not for lost earnings)
- payments from other group insurance or benefit plan providing benefits relating to your disability (whether or not for lost earnings),
- payments from a third party (after subtracting attorney's fees) by judgment, settlement, or otherwise,
- social security payments, or any similar payments, and
- payments from a Wellmark retirement plan relating to Wellmark's contribution.

Only sources of income that are payable as a result of the same disability will be subtracted from the weekly payment.

Retirement plan payments will be those benefits that are based on Wellmark's contribution. Disability benefits that reduce the retirement benefit under the retirement plan will not be subtracted from the weekly payment.

You must notify us whenever you receive payments that are deductible sources of income. You must repay us for any overpayment of your claim resulting from your failure to notify us in a timely manner of such income.

If any of the above amounts are paid on a delayed or retroactive basis, your benefits under the Plan will be recalculated and will be deemed overpaid. You will be required to repay the overpayment through future benefit reductions, either directly or by assignment of other income, through payroll deduction as allowed by state law or as otherwise determined by the Plan Administrator.

## HOW LONG WILL YOU RECEIVE PAYMENTS?

You will receive a payment for each week you qualify for benefits up to the **maximum period of payment**, as shown in the Summary of Benefits.

## WHEN WILL BENEFITS UNDER THE PLAN END?

Your benefits under the Plan will end on the earliest of the following:

- the end of the maximum period of payment;
- the date you are no longer disabled under the terms of the Plan;
- the date you fail to submit proof of continuing disability within the applicable time period;
- the date you die; or
- the date you fail to cooperate with the Claims Administrator or fail to undergo a requested medical examination.

In addition, you may forfeit your benefits under the Plan and have to repay such benefits to us if you act in any way that is contrary to the best interests of the Plan or the Employer (referred to as "prohibited conduct"). Prohibited conduct includes providing or causing someone else to provide inaccurate, misleading, false or fraudulent information with respect to the benefits or your disability, obtaining any monetary payment from the Employer based on inaccurate, misleading, false or fraudulent information, or releasing or disclosing any technical information, trade secrets, proprietary information or customer information. Prohibited conduct also includes any conduct that violates the Employer's business ethics and conduct policy in effect at the time the violation occurs.

Benefits will not be paid if you are incarcerated.

**WHAT HAPPENS IF YOU RETURN TO WORK AT YOUR REGULAR SCHEDULE AND YOUR DISABILITY OCCURS AGAIN?**

If you return to work with us at your regular full time or part-time basis for 30 consecutive calendar days or less, and you again become disabled due to the same or related cause, then your current disability will be treated as part of your prior claim and you will not have to complete another elimination period. In this situation, your benefit payments for the multiple periods of disability will be added together and will not exceed the maximum benefit payment period under the Plan. For example, if you receive disability payments for 60 days, return for 15 days, and then are absent again due to the same or related disability, you will be eligible for up to an additional maximum of 120 days of benefits (the maximum period reduced by 60).

If you return to work at your regular schedule for thirty-one or more consecutive days and are disabled again, your disability will be treated as a new claim. The new claim will be subject to all of the provisions of the Plan. You will be required to satisfy a new elimination period and you will be eligible for a new maximum benefit payment period.

If you return to work at your regular schedule for at least one day and you become disabled again due to a new or different disability that is not related to your first disability, then your new disability will be treated as a new claim. The new claim will be subject to all of the provisions of the Plan. You will be required to satisfy a new elimination period and you will be eligible for a new maximum benefit payment period.

# VI. EXCLUSIONS AND LIMITATIONS

**ARE THERE DISABILITIES THAT ARE NOT COVERED UNDER THE PLAN?**

Yes. Benefits will not be paid for any disabilities caused by, contributed to by, or resulting from your:

- occupational sickness or injury,
- service in the armed forces of any government,
- active participation in a riot, insurrection, rebellion or civil commotion,
- commission of a crime for which you have been convicted,
- commission of an assault, battery or felony, or as a result of such commission, or
- cosmetic or elective procedure/surgery, unless such procedure/surgery is in connection with an injury or sickness sustained while covered under the Plan,

Loss of a professional license, occupational license or certification, by itself, is not covered under the Plan, if such loss is not related to your disability.

The Plan will not cover a disability due to war, declared or undeclared, or any act of war.

The Plan will not pay a benefit for any period of disability during which you are incarcerated.

**WHAT HAPPENS IF MY DISABILITY WAS CAUSED BY ANOTHER PARTY?**

If you suffer from a disability caused by the actions or omissions of a third party, the Plan has the right to recover from the third party the Plan's disability payments that it made to you. For this purpose, a "party" means any individual, entity, person or other party responsible for causing your disability or responsible for making any payment to you due to your disability, including uninsured motorist coverage, underinsured motorist coverage, traditional fault-based automobile insurance coverage, no-fault automobile insurance coverage, homeowner's/renter's insurance, personal umbrella coverage, Workers' Compensation coverage and any first-party insurance coverage. However, a party does not include any individual or supplementary insurance policy or coverage classified as an individual cancer, individual specific disease or individual hospital indemnity policy (e.g., individual policies sold by AFLAC). For purposes of any applicable coordination of benefits rules, a third party pays primary and the Plan pays secondary. This means that the Plan has the right to obtain reimbursement from group or individual automobile insurance (including uninsured motorist coverage, underinsured motorist coverage, traditional fault-based automobile insurance coverage and no-fault automobile insurance coverage) and any

medical, disability or other compensation under homeowner's/renter's insurance. In all cases, these coverages will pay primary to this Plan if any coordination of benefits rules are applicable.

**For example, if you are injured in a car accident, the person who caused the accident (and the person's insurer) are the third parties.** You will be required to provide the Plan or its agents information concerning any claim or lawsuit you may have against a third party regarding a disability caused by that party. You must also provide any documents or information relevant to the protection of the Plan's rights of reimbursement. You may be asked to sign a repayment agreement as a condition for receiving benefits under the Plan. If the agreement is not signed or you fail to cooperate with the claims administrator, you will lose your benefits. If you do not cooperate, the claims administrator may terminate your disability benefits from the Plan after a certain date even if your disability benefits were approved before that date.

**If you decide to sue the person who caused your disability, you must inform the claims administrator.**

If you receive any type of payment, reimbursement or legal recovery from a third party or an insurer, you are obligated to reimburse the Plan for any disability benefits that the Plan paid (and will pay in the future) to you and for any related legal and collection costs the Plan incurred. Any amounts recovered in excess of the foregoing shall be paid to you, but any excess portion shall be first applied to reduce the liability of the Plan for future payments of benefits with respect to the disability that is the subject of the right of reimbursement. The Plan may initiate legal action against you (or anyone else holding the proceeds, such as a legal representative or trust) to collect the payment, reimbursement or legal recovery, and may take any other actions allowed by applicable law to protect its right of reimbursement.

**In the above example, if the Plan paid disability benefits to you, and you later received money from the person who caused your disability or such person's insurer, you must pay back the Plan from the money paid by the person who caused your disability or such person's insurer.**

Your obligation to reimburse the Plan exists for any legal recovery that relates to your disability for which the Plan paid benefits (including any amounts used to pay your legal fees), even if you recover less than initially claimed (or less than your full loss) and even if the legal recovery is designated as not for lost earnings. In addition, the right of full and unreduced reimbursement shall also apply even if the rights of the Plan are separated and treated as not resolved in the judgment, settlement, verdict or insurance proceeds (but in this case, the Plan's rights shall be assigned to you to the extent reimbursement is actually received out of the recovery). The Plan's right to receive any payment, reimbursement or

recovery discussed in this section supersedes and has priority over your right to receive any payment, reimbursement and recovery.

In order to recover any reimbursement, payment, overpayment or excess payment to which the Plan has a right of reimbursement as provided above, you, as a condition of receiving benefits, grant to the Plan the following rights:

- A first priority equitable lien against the proceeds of any settlement, verdict, insurance proceeds or other amounts received by you from or on behalf of any third party that may be responsible for an injury or condition for which the Plan paid benefits. The amount of the lien is equal to the amount of benefits paid (and to be paid in the future) by the Plan plus legal and collection costs the Plan incurred
- The right to impose a constructive trust on the proceeds from any settlement, verdict, insurance or other amounts awarded, transferred or paid by or on behalf of a third party to you and any other person or entity holding the proceeds, including a legal representative or trust
- The right to bring any legal action or proceeding to enforce the above rights in any court of competent jurisdiction as the Plan may elect, and upon receiving benefits under the Plan, you hereby submit to each jurisdiction regardless of your current or future residence.

In addition, when another party is legally responsible or agrees to compensate you for a disability for which you have previously received benefits from the Plan, the Plan has the same rights ("right of subrogation") that you have against the party. For this purpose, a "party" means any individual, entity, person or other party responsible for causing your disability or responsible for making any payment to you due to your disability, including uninsured motorist coverage, underinsured motorist coverage, traditional fault-based automobile insurance coverage, no-fault automobile insurance coverage, homeowner's/renter's insurance, personal umbrella coverage, Workers' Compensation coverage and any first-party insurance coverage. However, a party does not include any individual or supplementary insurance policy or coverage classified as an individual cancer, individual specific disease or individual hospital indemnity policy (e.g., individual policies sold by AFLAC).

The Plan expressly rejects and overrides any default rule that it does not have a right of subrogation until you have been fully compensated. If you enter into litigation or settlement with another party, the Plan's right of subrogation will still apply.

You will need to provide the Plan or its agents with any relevant information, assistance and documents that help the Plan obtain its subrogation rights. Also, you could be required to sign and deliver to the Plan or its agents documents to secure its subrogation rights, and

you will be required to obtain the consent of the Plan or its agents before releasing any party from liability for payment. If you fail to cooperate with the claims administrator, you will lose your disability benefits. If you do not cooperate, the claims administrator may terminate your disability benefits from the Plan after a certain date even if your disability benefits were approved before that date.

# VII. CLAIM AND APPEAL INFORMATION

**WHEN DO YOU NOTIFY US OF A CLAIM?**

We encourage you to notify Liberty Mutual of your claim as soon as possible, so that a claim decision can be made in a timely manner. Telephonic notice of a claim should be reported to Liberty Mutual within 30 days after the date your disability begins. However, in all events you must file a claim within 180 days after your first date of disability. Claims filed after 180 days from your first date of disability will be void and not accepted. Such notice of claim must be received in a form or format satisfactory to Liberty Mutual on behalf of the sponsor.

You must notify Liberty Mutual immediately when you return to work in any capacity. Unless we have given you different delivery instructions, you should use the contact information on the communications you received from Liberty Mutual related to your claim.

**HOW DO YOU FILE A CLAIM?**

Call (800) 883-9694 to report your claim. You will be given your claim number as proof that your claim has been reported to Liberty Mutual. In addition, you will be given the toll-free number to the Kansas City Liberty Mutual claim office that will handle your claim.

If your physician has their own authorization form, please sign this form so they may release your necessary medical information to Liberty Mutual. If they do not have an authorization form, you can request one from Liberty Mutual.

Your physician will be asked to supply information to Liberty Mutual either over the phone, fax, or mail about your illness or accident.

**WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?**

Your proof of claim, provided at your expense, must show:

- that you are under the regular care of a physician;
- the date your disability began;
- the cause of your disability;
- the extent of your disability, including restrictions and limitations preventing you from performing your regular occupation; and
- the name and address of any hospital, institution or other source where you received treatment, including all attending physicians' names and addresses.

We may request that you send proof of continuing disability indicating that you are under the regular care of a physician. This proof must be received within 45 days of a request by us.

In some cases, you will be required to give us and Liberty Mutual authorization to obtain

additional medical information, and to provide non-medical information as part of your proof of claim, or proof of continuing disability. We will deny your claim, or stop sending you payments, if the appropriate information is not submitted on a timely basis.

## TO WHOM WILL PAYMENTS BE MADE?

Payments will be made to you by Wellmark.

## WHAT HAPPENS IF YOUR CLAIM IS OVERPAID?

We have the right to recover any overpayments due to:

- fraud;
- any error made in processing a claim; and
- your receipt of other sources of income.

You must repay us for any overpayment in your claim. Alternatively, we may reduce or eliminate future payments instead of requiring repayment.

## FRAUD WARNING

We take fraud very seriously. If you, with intent to defraud or knowing that you are facilitating a fraud against us, submit an application, or file a claim containing a false or deceptive statement, we may take legal action against you and pursue all legal and equitable remedies we have against you. Whenever payments have been made based on inaccurate, misleading, false or fraudulent information, including information provided by you, your family members or your doctor, the Plan has the authority to suspend or terminate payments of future benefits and to collect prior overpayments.

## WHAT IS THE VENUE AND WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?

All administrative appeal procedures offered by us must be completed before you begin any legal action regarding your claim. In no event, can you start any legal action regarding your claim more than the later of three years from the first date that you became disabled (or claim to have become disabled) or three years from the date of the alleged wrongful denial of benefits (in whole or in part). All other claims, including eligibility claims, must be brought within two years from the date you know or should know of the actions or events that gave rise to your claim.

Any claim or action filed in a court or any other tribunal against or with respect to the Plan can only be brought or filed in the United States District Court for the Southern District of Iowa.

## CLAIM AND APPEAL PROCEDURES

You must submit any claim under the Plan, regarding a claim for benefits or eligibility, to Liberty Mutual. You will receive notice of the decision on your claim no later than 45 days after the Claim is filed. This 45-day period may be extended for up to 30 days if necessary

and for reasons beyond the control of the claims administrator (including in cases where a claim is incomplete), and you will be notified in writing of the need for the extension before the expiration of the initial 45-day period; and up to an additional 30 days after the first 30-day extension, provided that you are notified of the need for the extension before the end of the first 30-day extension. The claims administrator may secure independent medical or other advice and require such other evidence, as it deems necessary to decide your claim.

The disability extension notice will explain the reasons and unresolved issues that prevent a decision on the claim, additional information needed to resolve the issues, and the expected date of the decision.

If your Claim is wholly or partially denied, the notice of adverse benefit determination under the Plan will:

- state the specific reason(s) for the determination;
- reference specific Plan provision(s) on which the determination is based;
- describe additional material or information necessary to complete the claim and why such information is necessary;
- an explanation of how to appeal for reconsideration of the claims administrator's decision, including your right to submit written comments and have them considered;
- your right to review, upon request and free of charge, relevant documents and other information;
- a statement disclosing any internal rule, guidelines, protocol or similar criterion relied on in making the adverse determination (or a statement that such information will be provided free of charge upon request);
- if your claim was denied based on a medical necessity or experimental treatment or similar exclusion, an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to your medical circumstances (or a statement of your right to receive such an explanation upon request); and
- your right to file suit under ERISA with respect to any adverse determination after appeal of your claim.

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

**APPEALS**

You have 180 days from the receipt of notice of an adverse benefit determination or claim denial to file an appeal. Requests for appeals should be sent to the address specified in the claim denial. A decision on review will be made not later than 45 days following receipt of the written request for review. If special circumstances require an extension of time for a decision on review, the review period may be extended by an additional 45 days (90 days in total). You will be notified in writing if an additional 45 day extension is needed. If an extension is necessary due to your failure to submit the information necessary to decide the appeal, the notice of extension will specifically describe the required information and you will be afforded at least 45 days to provide the specified information.

You will have the opportunity to submit written comments, documents, or other information in support of your appeal. You will have access to all relevant documents as defined by applicable U.S. Department of Labor regulations. The review of the adverse benefit determination will take into account all new information, whether or not presented or available at the initial determination. No deference will be afforded to the initial determination. The review will be made by a person different from the person who made the initial determination and such person will not be the original decision maker's subordinate. In the case of a claim denied on the grounds of a medical judgment, a health professional with appropriate training and experience will be consulted. The health care professional who is consulted on appeal will not be the individual who was consulted during the initial determination or a subordinate. If the advice of a medical or vocational expert was obtained by the Plan in connection with the denial of your claim, you will be provided with the names of each such expert, regardless of whether the advice was relied upon.

A notice that your request on appeal is denied will contain the following information:

- the specific reason(s) for the determination;
- a reference to the specific Plan provision(s) on which the determination is based;
- a statement disclosing any internal rule, guidelines, protocol or similar criterion relied on in making the adverse determination (or a statement that such information will be provided free of charge upon request);
- if your appeal was denied based on a medical necessity or experimental treatment or similar exclusion, an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to your medical circumstances (or a statement of your right to receive such an explanation upon request);
- a statement describing your right to bring a civil suit under ERISA Section 502(a); and
- the statement that you are entitled to receive upon request, and without charge, reasonable access to or copies of all documents, records or other information relevant to the determination.

Notice of the determination may be provided in written or electronic form. Electronic notices

will be provided in a form that complies with any applicable legal requirements.

You may not bring a legal action for claims for benefits or eligibility or other issue under the Plan until you have exhausted these claims and appeals procedures.

**DISCRETIONARY ACTS**

In exercising its discretionary powers under the Plan, the Plan Administrator and the Claims Administrator will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan.  Benefits under the Plan will be paid only if the Plan Administrator or Claims Administrator (as applicable) decide in its discretion that the applicant is entitled to them. The Plan Administrator and Claims Administrator also have the discretion to determine eligibility for benefits and to interpret the terms and conditions of the Plan.

# VIII. DEFINITIONS

**ELIMINATION PERIOD** means a period of continuous disability which must be satisfied before you are eligible to receive benefits.

**EMPLOYEE** means a person who is classified by the Employer as a regular US employee and is included in its US payroll records as a regular employee for whom the Employer withholds taxes. If you have been classified as ineligible and you are reclassified into an eligible class, either by action of the Plan Administrator or by a court or governmental or judicial authority, you will not be eligible to participate in the Plan for the period of time you had been excluded because of such classification. However, you will be an Employee prospectively from the date of such reclassification.

**EMPLOYER** means the entity identified on the cover page and any division, affiliate or subsidiary listed in the Summary of Benefits.

**GROSS DISABILITY PAYMENT** means the benefit amount before we subtract other sources of income and disability earnings.

**HOSPITAL OR INSTITUTION** means a facility licensed to provide medical care and treatment for the condition causing your disability.

**INJURY** means a bodily injury that is the result of an accident.

**LAW, PLAN OR ACT** means the original enactments of any law, Plan or act and all amendments.

**LAYOFF** or **LEAVE OF ABSENCE** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by us. Your normal vacation time or any period of disability is not considered a temporary layoff or leave of absence.

**LIMITED** means what you cannot or are unable to do.

**MATERIAL AND SUBSTANTIAL DUTIES** means duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, we will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

**MAXIMUM PERIOD OF PAYMENT** means the longest period of time the Plan will make payments to you for any one period of disability.

**OCCUPATIONAL SICKNESS OR INJURY** means a sickness or injury that was caused by or aggravated by any employment for pay or profit.

**PAYABLE CLAIM** means a claim for which the Plan is liable.

**PHYSICIAN** means a person performing tasks that are within the limits of his or her medical license who is also:

- a person who is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
- a person with a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
- a person who is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

You, or your spouse, children, parents or siblings will not be considered as a physician for a claim that you send to us.

**PLAN** means this Short Term Disability Plan.

**REGULAR CARE** means:

- you personally visit a physician as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and
- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a physician whose specialty or experience is the most appropriate for your disabling condition(s).

**REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. We will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

**RETIREMENT PLAN** means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions. Retirement Plan includes, but is not limited to, any plan which is part of any federal, state, county, municipal or association retirement system.

**SICKNESS** means an illness or disease.

**SOURCES OF INCOME** means income from deductible sources listed in the Plan which you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

**WAITING PERIOD** means the continuous period of time (shown in the Summary of Benefits) that you must be in active employment in an eligible group before you are eligible for coverage under the Plan.

**WE**, **US** and **OUR** mean the Employer or Plan Administrator (as applicable).

**WEEKLY BENEFIT** means the total benefit amount an employee is eligible for under the Plan subject to the maximum benefit.

**WEEKLY PAYMENT** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

**YOU** means a person who is eligible for coverage under the Plan.

# IX. ERISA PROVISIONS

## IS THERE ADDITIONAL INFORMATION YOU SHOULD KNOW ABOUT THE PLAN?

Here is additional information about your Plan that you will find useful:

**Name of Plan:**
Wellmark, Inc. Short Term Disability Plan

**Name and Address of Plan Sponsor/Employer:**
Wellmark, Inc.
1331 Grand Avenue, Station 1W037
Des Moines, Iowa 50309
(515) 376-4848 or 1-800-577-9557

**Plan Identification Number:**
a. IRS Employer Identification #: 42-0318333
b. Plan #: 514

**Type of Welfare Plan:**
Short Term Disability

**Type of Administration:**
The Plan is administered by Wellmark, Inc.

Wellmark, Inc. has contracted with Liberty Mutual, the Claims Administrator, to provide certain administrative claims handling services for the Plan.

**Plan Year:**
January 1 through December 31

**Plan Administrator Name, Address, and Telephone Number:**
Wellmark, Inc.
1331 Grand Avenue, Station 1W037
Des Moines, Iowa 50309
(515) 376-4848 or 1-800-577-9557

Wellmark, Inc. is the Plan Administrator and named fiduciary of the Plan, with authority to delegate its duties including its fiduciary duties.

**Agent for Service of Legal Process on the Plan:**

Service of legal process may be made upon the Plan Administrator, addressed to General Counsel.

**Funding and Contributions:**

Benefits under the Plan are payable solely from the general assets of the Plan Sponsor. No employee contributions are required or permitted.

## EMPLOYER'S RIGHT TO AMEND THE PLAN

We reserve the right, in our sole and absolute discretion, to amend, modify, or terminate, in whole or in part, any or all of the provisions of the Plan (including any related documents), at any time and without advance notice.

If we terminate the Plan, coverage will end as set forth in the terminating resolutions or other documents. If a coverage end date is not specified as part of the termination action, coverage will cease under the Plan at end of the day on the day of termination. If the Plan is terminated, termination will not affect a payable claim that has been validly submitted to the Plan prior to the termination.

## HOW TO FILE A CLAIM

If you wish to file a claim for benefits, you must follow the claim procedures provided by Liberty Mutual and as set forth in this Summary Plan Description. If you wish to file a claim for eligibility, you must follow the claim procedures set forth in this Summary Plan Description and you must file your claim with the Plan Administrator. See Section VII for additional information.

If you or your authorized representative have any questions about what to do, you or your authorized representative should contact Wellmark, Inc. or Liberty Mutual, using the contact information on the cover page of the Plan.

## YOUR RIGHTS UNDER ERISA

As a participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to:

Receive Information About Your Plan and Benefits

Examine, without charge, at the Plan Administrator's office and at other specified locations, all documents governing the Plan, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your Employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

Enforce Your Rights

If your claim for a benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, if, for example, it finds your claim is frivolous.

Assistance with Your Questions

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of

Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.