UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF IOWA

CENTRAL DIVISION

| | |
|---|---|
| SHARILYN ERVIN,<br><br>Plaintiff,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, WELLMARK INC. GROUP DISABILITY INCOME PLAN, WELLMARK, INC. d/b/a WELLMARK BLUE CROSS AND BLUE SHIELD OF IOWA, and WELLMARK, INC. WELFARE BENEFIT WRAP-AROUND PLAN,<br><br>Defendants | Case No. 4:25-CV-00438-RGE-HCA<br><br>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION STIPULATED PROTECTIVE ORDER COMPANY, et al.,) (DOC. 57) |

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR STIPULATED PROTECTIVE ORDER (DOC. 57)

Plaintiff Sharilyn Ervin, proceeding pro se, respectfully submits this Response in Opposition to Defendants' Joint Motion for Stipulated Protective Order (Doc. 57) and states as follows:

I. PRELIMINARY STATEMENT AND MISLEADING TITLE

1. Plaintiff opposes Defendants' Motion. On July 16, 2026, Wellmark's counsel proposed filing the draft protective order jointly, attaching a statement of Plaintiff's objections and proposed revisions, "so the Court can decide." (Ex. A, July 16, 2026, 3:25 PM email.) Plaintiff rejected that approach the next day, stating in writing that she would "not be signing or jointly submitting Wellmark's draft" and that "Wellmark will need to file its own Motion for a

Protective Order under Rule 26(c) if it seeks court protection." (Ex. A, July 17, 2026, email.) Defendants filed the instant Motion as a "Joint Motion for Stipulated Protective Order" regardless — over Plaintiff's express, written objection to proceeding jointly at all. As Defendants themselves acknowledge in Paragraph 5 of their Motion, Plaintiff rejected substantial portions of the proposed draft, including Paragraphs 6, 8, 12, and 13, and proposed substitute language for Paragraph 2. A motion filed as "joint" and "stipulated," over a party's express written refusal to file jointly and express written statement that the opposing party must proceed under Rule 26(c) alone, misrepresents the posture of the parties.

2. Plaintiff repeatedly advised Defendants in writing that she would not sign or jointly submit Wellmark's draft, and that Wellmark would need to file its own motion under Fed. R. Civ. P. 26(c) if it sought court protection. There was no urgency for Wellmark, who again failed to properly meet and confer regarding its broad terms. Defendants' characterization of this Motion as “stipulated,” and of Plaintiff's position as general agreement subject only to narrow exceptions, does not accurately reflect the record of the parties' correspondence, attached hereto as Exhibit A.

3. Plaintiff does not seek a protective order to shield her own documents and maintains that routine, non-proprietary business communications and the administrative record itself are not properly subject to a blanket “Confidential” designation. Plaintiff's primary procedural concern has always been the improper cross-sharing and unauthorized transfer of her sensitive medical information and administrative claim files between two distinct, separate federal actions without her consent or valid court authorization. Plaintiff initiated communications regarding discovery handling strictly to ensure that the Federal Rules of Civil Procedure were rigorously enforced

across both cases, rather than allowing Defendants to engage in informal, unregulated exchanges of sensitive personal health records.

4. Defendant Wellmark's position regarding discovery remains impractical. Wellmark previously obtained a stay of discovery production and now seeks an expansive protective order in a straightforward action concerning the failure to provide ERISA plan documents — a failure Defendant has already acknowledged. Notably, Wellmark has already produced over 1,000 pages of documents as part of its initial disclosures without any protective order in place, a fact discussed further below. Plaintiff does not seek highly confidential or proprietary corporate records; her request is strictly limited to the applicable plan policies — which Defendant has already produced in part and filed in connection with its motions to dismiss (ECF Doc. 10 (2/13/26) and Doc. 25) — and standard communications and policies directly concerning the administration and processing of these document requests.

5. Defendant Lincoln National Life Insurance Company ("Lincoln") was required to complete its discovery responses and production by June 19, 2026. Rather than producing the documents, Lincoln conditioned its compliance on the entry of a protective order. As documented in counsel's June 29, 2026, email, Lincoln explicitly agreed to produce responsive materials for Request for Production Nos. 8 and 31, as well as Interrogatory Nos. 11 and 12 (including relevant technical reference tools, claims guidelines, and third-party vendor contracts with Dane Street), "subject to the terms of an agreed protective order." Despite Plaintiff's express willingness to execute a standard confidentiality agreement specifically tailored to Lincoln's proprietary materials and PII, Lincoln failed to present an independent, workable draft. Instead, Lincoln continues to improperly withhold these promised discovery materials while attempting to piggyback on Wellmark's broad, disputed Motion. Ex. B.

## II. LEGAL STANDARD

6. Under Federal Rule of Civil Procedure 26(c)(1), a court may issue a protective order only upon an affirmative showing of "good cause" by the moving party. The burden rests entirely on the party seeking protection to make a "specific demonstration of fact, as opposed to conclusory statements," proving that public disclosure will result in a clearly defined, serious injury. See General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir. 1973).

7. Where a party seeks to shield business records or trade secrets under Rule 26(c), it must make a specific factual showing that the material is actually confidential and that its disclosure would cause a clearly defined competitive or commercial harm. See In re Remington Arms Co., Inc., 952 F.2d 1029, 1032 (8th Cir. 1991). Blanket generalized assertions that discovery materials are "commercial" or "standard" do not satisfy this burden. As set forth below, Defendants' Motion falls squarely into the category of conclusory assertion that these authorities reject.

## III. DEFENDANTS FAILED TO MEET AND CONFER ON SPECIFIC, IDENTIFIED PROVISIONS

8. While the parties engaged in one conference and an exchange of emails regarding a protective order generally, Defendants failed to meaningfully meet and confer on the specific, newly added provisions to which Plaintiff repeatedly objected — including Paragraph 6's artificial intelligence restriction and the scope of Paragraph 2.

9. The parties' only telephonic meet-and-confer occurred on June 29, 2026. That call addressed Lincoln's specific discovery responses (Request Nos. 8 and 31, Interrogatory Nos. 11 and 12) and the narrow question of using the LTD claim file across this action and Case No.

4:25-cv-00086-RGE-HCA — the specific cross-case-sharing concern that had prompted Plaintiff to first raise the possibility of a protective order in the first place. (Ex. A, June 30, 2026, email ["Can you advise if we are at impasse on the usage of the LTD claim file in multiple lawsuits... If so, I would like to file a protective order."]; Ex. A.) Neither Wellmark nor Lincoln proposed a broader order, an AI-use restriction, or an expansive "Confidential" definition at any point before or during that call. Plaintiff asked in advance of the conference that each party provide its position in writing. (Ex. A, June 24, 2026, email.) Rather than substantively respond, Wellmark's counsel stated only that Plaintiff's draft "lacks the standard language typically used in protective orders in federal court" — without identifying what that language was. (Ex. A, June 23, 2026, email. It was not until July 1, 2026 — two days after the parties' only phone conference — that Wellmark's counsel circulated the first draft containing Paragraph 6's AI restriction and Paragraph 2's broad "Confidential" definition. (Ex. A, July 1, 2026, 4:41 PM email.) These provisions were never discussed by phone with Plaintiff at any time. When Plaintiff raised written objections to them on July 16, 2026, Lincoln's counsel responded that "all issues you raised during our call were resolved during the conference" (Ex. A, July 16, 2026, 11:28 AM email) — a characterization that cannot be accurate, since the provisions Plaintiff objects to in this Response did not exist in any written draft until after that call took place. No telephonic meet-and-confer was ever held, or offered, on Paragraph 2, Paragraph 6, or Paragraphs 8, 12, and 13 specifically, despite Plaintiff's repeated written requests for one

10. As to Paragraph 6, however, Wellmark offered no case-specific justification whatsoever, either in that email or in the Motion itself. Doc. 57 ¶ 6 states only that the clause is intended "to prevent the disclosure of confidential information to the public through use of generative artificial intelligence tools" — a restatement of the provision's function, not a reason it is

necessary in this litigation, for these parties, or as to any category of document actually at issue. A meet-and-confer obligation requires a good-faith effort to explain and resolve specific disputes; Wellmark's silence as to Paragraph 6, in contrast to the (however brief) explanations it did offer for other paragraphs, is the clearest evidence that no genuine conferral occurred on this provision specifically. Notably, Wellmark's own counsel initially agreed to remove the AI provision from the protective order draft. In her July 16, 2026, email, Ms. Behaunek stated: "I have revised the protective order draft circulated on July 1, 2026, to remove the AI provision," and renumbered the remaining paragraphs accordingly. (Ex. A, July 16, 2026, 3:25 PM email.) Despite this express removal, Paragraph 6 reappears, unchanged, in the version of the proposed order attached to the instant Motion. Defendants have not explained why a provision their own counsel deemed removable eleven days before filing was nonetheless included in the operative motion without renewed justification or notice to Plaintiff that it had been reinserted

11. This is not the first instance in this litigation of Wellmark filing a motion without a genuine meet-and-confer. On May 29, 2026, Wellmark filed a Motion for Protective Order (Doc. 48) days after issuing an ultimatum rather than engaging in substantive dialogue, prompting Plaintiff's Notice to the Court regarding Wellmark's procedural gamesmanship. The pattern has repeated here: Defendants' counsel characterized standard-language objections as sufficient conferral and proceeded to file rather than substantively address Plaintiff's specific concerns.

## IV. DEFENDANTS FAIL TO ESTABLISH GOOD CAUSE FOR THE BROAD DEFINITION OF “CONFIDENTIAL” IN PARAGRAPH 2

12. As set forth in Section II above, the burden rests entirely on the party seeking protection to demonstrate good cause for each category of information it seeks to shield from disclosure. A generalized assertion that language is “standard” does not satisfy that burden.

13. Paragraph 2(c) of Defendants' proposed order would permit designation of "research, technical, commercial information that the party has maintained as confidential" as "Confidential." This category is materially broader than the other enumerated categories in Paragraph 2 and is untethered to any showing of actual or likely harm from disclosure, as Rule 26(c) requires. Plaintiff is further unable to determine what "research," "technical," and "commercial" are intended to mean in this context. Defendants' attempt to demand protection for these broad, undefined categories is confusing and misplaced in a straightforward action concerning the failure to produce required ERISA plan documents; this litigation involves no proprietary corporate research or technical trade secrets. Notably, Defendant Lincoln originally sought confidentiality only for a narrow, specific set of materials — namely, its internal claims manuals, technical reference tools, and personal identifying information (PII). Ex. B. By contrast, Wellmark is reaching for an expansive commercial umbrella to sweep routine administrative records and standard employee communications under a blanket veil of secrecy, misapplying Rule 26(c) and creating unnecessary procedural hurdles.

14. The term "research," in particular, does not correspond to any subject matter at issue in this case. This is a benefits and document-production dispute under ERISA; it does not involve proprietary scientific or technical research of the kind for which such language is typically included in template protective orders. Defendants' proposed order mirrors a template used in the Northern District of Iowa (Doc. 57 ¶ 3), and Paragraph 2(c) appears to have been adopted wholesale from that template without any tailoring to the facts of this case.

15. Wellmark's role in this action is limited to a single count concerning its alleged failure to provide documents. The category of discoverable material bearing on that claim is narrow, and

Wellmark has identified no proprietary research, commercial strategy, or technical information at risk of disclosure that would warrant so broad a definition.

16. Wellmark's own conduct in this litigation confirms the absence of any genuine need for broad protection: its initial disclosures included approximately 1,000 pages of documents, produced without any protective order in place. Defendants cannot now credibly claim that a sweeping, court-ordered confidentiality regime is necessary for materials of the same general character.

17. If Wellmark or Lincoln believe that specific, identified documents warrant confidential treatment, the burden rests on the designating party to seek targeted protection for those specific documents under Rule 26(c) — not to impose a broad, catch-all category covering essentially any commercial or financial information either party subjectively chooses to treat as sensitive.

18. Plaintiff's proposed alternative language for Paragraph 2, set forth in her July 16, 2026, email and in Paragraph 5 of Defendants' own Motion, is narrowly tailored to the categories of information legitimately at issue in this case: highly sensitive personal identifying information, certified trade secrets, and Lincoln's internal claims manuals, guidelines, and training policies. Plaintiff's proposed language should be adopted in place of Paragraph 2 as drafted by Defendants.

## V. PARAGRAPH 6'S ARTIFICIAL INTELLIGENCE PROVISION IS VAGUE, UNNECESSARY, AND UNSUPPORTED BY GOOD CAUSE

19. Paragraph 6 restricts the use of any “artificial intelligence” tool to process Confidential information unless the tool (a) operates on dedicated hardware under the party's control; (b) does

not transmit Confidential information to third-party servers; (c) does not use data for model training; and (d) allows secure deletion or claw-back of data upon request.

20. This provision is not standard boilerplate, and Defendants have offered no explanation — despite Plaintiff's specific request on July 16, 2026 — as to why it is necessary in this case. Defendants' Motion offers no good cause specific to this litigation; it states only that the clause is intended "to prevent the disclosure of confidential information to the public through use of generative artificial intelligence tools" (Doc. 57 ¶ 6), without identifying any actual risk particular to this case, these parties, or the categories of documents at issue. Despite having agreed to remove it, Defendants have nonetheless left this paragraph in a stipulation to which Plaintiff does not, in fact, stipulate.

21. The provision is also vague and unworkable as applied to a self-represented litigant. It does not define what constitutes an "AI tool," despite the fact that artificial intelligence functionality is now embedded in ordinary, everyday software — including word processors, email platforms, spam filters, and search tools — and not only in standalone applications such as a chatbot. As written, Paragraph 6 could be read to reach software Plaintiff already uses for ordinary case management, without any practical way for a pro se party to determine which embedded features would trigger the clause or how to comply with it.

22. The requirement that any permitted AI tool "operate on dedicated hardware under the party's control" is a standard typically met only through negotiated enterprise agreements with dedicated infrastructure — an arrangement unavailable to Plaintiff as a self-represented litigant and not shown to be necessary for a single-count document-production dispute of this kind.

23. Defendants themselves concede in their Motion that they are “willing to remove paragraph 6 in an effort to reach compromise” but simply “prefer to retain” it. (Doc. 57 ¶ 6.) This concession confirms that Paragraph 6 is not essential to any interest Defendants have articulated, and its inclusion — without case-specific explanation and without adequate meet-and-confer discussion of Plaintiff's concerns — should not be imposed on a self-represented party over her objection.

24. Plaintiff respectfully submits that Paragraph 6 should be stricken in its entirety.

## VI. DEFENDANT LINCOLN HAS NO BASIS TO CONTINUE WITHHOLDING DISCOVERY

25. On June 29, 2026, Lincoln's counsel confirmed in writing that Lincoln agreed to produce specific outstanding discovery — including Request No. 8, Request No. 31, and Interrogatory Nos. 11 and 12 — “subject to the terms of an agreed protective order,” and represented that a draft protective order limited to that agreement would be circulated before July 9, 2026. (Ex. B, June 29, 2026, email from I. Rademaekers.)

26. No such narrow draft was ever circulated by Lincoln. Instead, on July 1, 2026, Wellmark's counsel circulated a broad joint template covering all documents produced by any party in this action — not limited to the specific items Lincoln itself identified as requiring protection.

27. Lincoln's own June 29, 2026, email establishes the precise scope of protection Lincoln itself represented that it needed: provisions of its technical reference tools relevant to Plaintiff's claim, and information regarding its contracts and referrals to Dane Street. Plaintiff has repeatedly offered, and continues to offer, a protective order limited to that scope, together with

Lincoln's proprietary claims manuals, guidelines, and training policies, and appropriate protection for personal identifying information.

28. Lincoln's continued withholding of discovery it already agreed to produce on June 29, 2026 — now well over three weeks after Lincoln's own proposed timeline for circulating a narrow order — is not supported by any need Lincoln itself has articulated. The absence of an entered protective order does not stay or excuse a party's discovery obligations under the Federal Rules of Civil Procedure, particularly where, as here, the withholding party has been offered a narrowly tailored order matching the scope of protection it identified as necessary. Plaintiff will separately seek a motion to compel Lincoln's production of discovery that was due June 19, 2026.

29. Lincoln should not be permitted to withhold discovery on the basis of a broad joint order it did not itself draft, and which extends well beyond the scope its own counsel described as necessary.

## VII. WELLMARK'S PATTERN OF PROCEDURAL MOTIONS PRACTICE IN LIEU OF SUBSTANTIVE ENGAGEMENT

30. Wellmark's approach to the instant Motion is consistent with a pattern of procedural motions practice, rather than substantive engagement, that has characterized its participation in this litigation from its outset. That pattern has taken two distinct forms over the life of this case: first, repeated attempts to be removed from the case entirely or to narrow Plaintiff's claims against it; and second, once those attempts were unsuccessful, a shift toward procedural motions that have had the practical effect of suspending Wellmark's own discovery obligations without ever squarely litigating the substance of what Plaintiff has requested.

31. Wellmark filed a Motion to Dismiss Plaintiff's original Complaint (Doc. 10, filed February 13, 2026), arguing it was not a proper defendant because Lincoln alone held discretionary authority over LTD benefit determinations. After Plaintiff amended her complaint, Wellmark filed a second Motion to Dismiss (Doc. 25/25-1, filed March 9, 2026), repeating the same fiduciary-scope argument and adding a statute-of-limitations argument against Plaintiff's STD documents claim.

32. When Plaintiff subsequently sought leave to file a Second Amended Complaint, Wellmark filed a Resistance (Doc. 33, filed April 10, 2026), again asserting the same fiduciary-scope and limitations arguments, adding a futility argument against Plaintiff's February 27, 2024, document request, and arguing that repeated amendment caused it undue prejudice. The Court granted Plaintiff leave to amend notwithstanding Wellmark's Resistance — and did so before Plaintiff's deadline to reply to Doc. 33 had even passed. Wellmark filed its Answer on May 4, 2026.

33. Having been unsuccessful in three consecutive attempts to be dismissed from the case or to prevent Plaintiff's amendment, Wellmark's subsequent conduct shifted toward procedural motions affecting discovery rather than the merits. On May 19, 2026, Plaintiff served her First Set of Written Discovery on Wellmark. Wellmark did not respond, request a conference, or raise any specific objection for nine full days. On May 28, 2026, at 3:12 p.m., Wellmark's counsel sent a single email demanding that Plaintiff withdraw her discovery requests by 3:00 p.m. the following day or face a motion. Plaintiff responded thirteen minutes later, declining to withdraw valid requests and noting that no meet-and-confer had occurred. Rather than engage further, Wellmark filed its Motion for Protective Order (Doc. 48) the next morning, raising scope and

legal objections it had never discussed with Plaintiff. Plaintiff filed a Notice with the Court on May 29, 2026, documenting this conduct. (ECF 50, Plaintiff's Notice to the Court.)

34. Wellmark's Motion for Protective Order (Doc. 48) became ripe on June 3, 2026, and remains pending and unresolved as of the date of this filing — more than seven weeks later. In the interim, the Court has stayed Wellmark's obligation to respond to Plaintiff's discovery, which had otherwise been due June 19, 2026. As noted above, Wellmark nonetheless produced approximately 1,000 pages of documents in its initial disclosures during this same period, without any protective order in place — demonstrating that Wellmark is capable of producing substantial discovery without the confidentiality apparatus it claims is necessary, and undercutting any suggestion that a broad protective order must be resolved before Wellmark can meaningfully participate in discovery.

35. Rather than using the seven weeks since Doc. 48 became ripe to resolve the substantive scope objections underlying it, Wellmark instead joined Lincoln in filing the instant Motion (Doc. 57) — again characterizing the parties' posture as one of substantial agreement despite Plaintiff's clearly documented objections, again proposing an unexplained, broad definition of "Confidential" in Paragraph 2(c), and again declining to substantively address Plaintiff's specific, written requests for an explanation of the provisions to which she objected.

36. Viewed as a whole, this record reflects a consistent pattern: three consecutive, unsuccessful attempts to remove Wellmark from the case or narrow Plaintiff's claims against it, followed by two successive procedural motions that have suspended Wellmark's discovery obligations without ever squarely contesting the merits of any specific discovery request. This pattern is directly relevant to the Court's consideration of the instant Motion, both as context for evaluating Defendants' representation that meet-and-confer obligations have been satisfied, and

as a caution against granting relief that would reward continued procedural delay over actual production. To date, both Lincoln and Wellmark have agreed in principle to produce discovery but have not done so — Lincoln citing the absence of a protective order, and Wellmark under the shelter of its pending, unresolved Motion (Doc. 48). Plaintiff recognizes that Doc. 48 is the subject of separate motion practice and raises this history here solely as context for the instant Motion.

## VIII. CONCLUSION AND REQUESTED RELIEF

37. For the foregoing reasons, Plaintiff respectfully requests that the Court:

(a) DENY Defendants' Joint Motion for Stipulated Protective Order (Doc. 57);

(b) In the alternative, should the Court find that some protective order is warranted, ADOPT Plaintiff's proposed language for Paragraph 2 (removing the terms "research," "commercial," and "technical" as set forth herein and in Paragraph 5 of Defendants' Motion), and STRIKE Paragraphs 6, 8, 12, and 13 of Defendants' proposed order;

(c) ORDER Defendant Lincoln National Life Insurance Company to immediately produce the outstanding discovery it agreed to provide on June 29, 2026, subject to a narrow, Lincoln-specific confidentiality agreement limited to its proprietary claims manuals, technical reference tools, Dane Street contract and referral information, and personal identifying information; and

(d) GRANT such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Sharilyn Ervin

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July 2026, I electronically filed the foregoing using the ECF system which will send notification of such filing to the following individuals or counsel of record:

Benjamin P. Roach, AT0006588 Leslie C. Behaunek, AT0011563 NYEMASTER GOODE, P.C. 700 Walnut Street, Suite 1300 Des Moines, IA 50309 Telephone: 515-283-3100 Facsimile: 515-283-8045 Email: bproach@nyemaster.com lcbehaunek@nyemaster.com ATTORNEYS FOR DEFENDANT WELLMARK INC./ GROUP DISABILITY INCOME PLAN

Brenda K. Wallrichs AT0008203 118 Third Avenue SE, Suite 700 P. O. Box 1927 Cedar Rapids, IA 52406-1927 Phone: (319) 365-1184 Fax: (319) 365-1186 E-mail: bwallrichs@lwclawyers.com Iwana Rademaekers 17304 Preston Road, Suite 800 Dallas, Texas 75252 Main: (214) 579-9319 Fax: (469) 444-6456 Email: iwana@rademaekerslaw.com ATTORNEYS FOR DEFENDANT THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

and

Pro se Plaintiff;
Sharilyn Ervin
515-423-1809
Ervinsharilyn2009@yahoo.com