**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| SHARILYN ERVIN,<br><br>Plaintiff,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, WELLMARK INC. GROUP DISABILITY INCOME PLAN, WELLMARK, INC. d/b/a WELLMARK BLUE CROSS AND BLUE SHIELD OF IOWA, and WELLMARK, INC. WELFARE BENEFIT WRAP-AROUND PLAN,<br><br>Defendants. | Case No. 4:25-cv-00438-RGE-HCA |

**DEFENDANTS THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, WELLMARK INC. GROUP DISABILITY INCOME PLAN, WELLMARK, INC. D/B/A WELLMARK BLUE CROSS AND BLUE SHIELD OF IOWA, AND WELLMARK, INC. WELFARE BENEFIT WRAP-AROUND PLANS' REPLY IN FURTHER SUPPORT OF THE JOINT MOTION FOR STIPULATED PROTECTIVE ORDER [ECF NO. 57]**

Defendants Wellmark, Inc. Group Disability Income Plan, Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa, and Wellmark, Inc. Welfare Benefit Wrap-Around Plans ("Wellmark") and The Lincoln National Life Insurance Company ("Lincoln") (collectively with Wellmark, the "Defendants") submit this Reply in further support of the Joint Motion for Stipulated Protective Order [ECF No. 57].

1. A stipulated or joint protective order is appropriate in this case, as the parties have agreed on all but four paragraphs in the draft order, and it is anticipated that no compromise agreement could be reached on the remaining provisions such that further conversations or communications as to those issues would have been futile. *See* ECF No. 58-1, pp. 3 and 6 (setting forth Ms. Ervin's agreement to all of the protective order terms *except* paragraphs 2, 6, 8, 12, and 13, and providing her proposed language to replace paragraph 2). At this juncture, the parties require the Court's assistance to decide whether to include paragraph 2 as-written and agreed-upon by Defendants, and whether to include paragraphs 6, 8, 12, and 13. No misrepresentation was intended, and in fact, the motion for protective order specifically describes the few areas of remaining disagreement between the parties.

2. Both counsel for Lincoln and counsel for Wellmark have exchanged multiple emails with Ms. Ervin and participated in a three-way phone conversation on June 29, 2026, to try to reach compromise regarding what should be a straight-forward protective order to govern the use of confidential documents in this case. In order to streamline the process and avoid conflict during this process of negotiating a protective order for documents, counsel for Wellmark used the Northern District of Iowa's template protective order that is publicly available on its website as a starting point (available here: https://www.iand.uscourts.gov/forms-0). The only revisions made to the draft stipulated protective order were to address the fact that there is a self-represented

litigant in this case, there are two cases with similar parties for which the claim file should be available to use in both cases, and to prevent anyone from putting documents that have been marked "Confidential" into a generative-AI tool unless certain precautions are in place. In other words, as little was revised as possible to keep the protective order simple and straightforward.

3. Although Wellmark has not produced any documents in this case with a "Confidential" marking, it is beneficial for *all* of the parties to have a clear set of rules to govern the use of confidential documents—including Wellmark. This avoids confusion and later motion practice to address the use of documents one or more parties seek to protect from disclosure.

4. Further, although there may not have been "urgency" for Wellmark to secure a protective order in this case (*see* ECF No. 58 ¶ 2), there was certainly urgency for Lincoln, as Ms. Ervin repeatedly demanded that Lincoln agree to a protective order by Monday, July 20, 2026, or Ms. Ervin would seek court intervention. *See* ECF No. 58-1 pp. 1 (demanding that Lincoln send over a "standard, narrow, Lincoln-only draft [protective order] by Monday, July 20, 2026" or she would be filing a motion to compel against Lincoln for its confidential documents); 2 (threatening Lincoln if it failed to provide a protective order); 5 (threatening to file a motion to compel confidential documents if Lincoln did not draft a "targeted protective order"); 6 (threatening to seek court intervention if Lincoln failed to agree to a "reasonable, simplified confidentiality agreement"). Wellmark and Lincoln had reached agreement on a simple, standard protective order, with a few case-specific modifications, almost all of which had been agreed to by Ms. Ervin in her July 16, 2026 1:32 p.m. email. *See* ECF No. 58-1, pp. 3 (Ms. Ervin's consent to all but a handful of terms) and p. 7 (confirming Lincoln's consent to the draft protective order circulated on July 1, 2026 by counsel for Wellmark, which mirrors the version filed as ECF No. 57-1). Additionally, Ms. Ervin misrepresents that Lincoln has failed to advance the entry of a protected order in this

action. ECF No. 58 ¶ 26. Counsel for Lincoln stated its agreement with the terms of Wellmark's counsel's draft of protective order the same day Wellmark's counsel circulated the draft, on July 1, 2026, which was two days after Lincoln's June 29, 2026, email to Ms. Ervin. There was simply no reason for Lincoln to circulate a different or separate draft.

5. Ms. Ervin contends that Defendants should be required to establish "good cause" before entry of a protective order for documents, but she *agrees* that entry of a protective order makes sense in this case for certain of Lincoln's documents, at the very least. *See* ECF Nos. 58-1, 58-2. She simply disagrees with the inclusion of a handful of standard terms pulled directly from the Northern District's form stipulated protective order and the inclusion of the AI language in paragraph 6. In other words, the parties *agree* that a protective order should be entered in this case; so no good cause analysis is needed where such an agreement has been reached.

6. Ms. Ervin raises issue with the fact that Defendants agreed initially to remove the AI provision in paragraph 6, but then included that provision in the draft protective order submitted to this Court. *See* ECF No. 58 ¶ 10. The only reason the Defendants were willing to remove the AI provision was because they were seeking to reach a compromise solution with Ms. Ervin and, ideally, submit a stipulated protective order that was agreed-to as to *all* provisions by *all* parties. Once it became clear that Ms. Ervin refused to agree to the inclusion of paragraphs 2 (as-written), 8, 12, or 13, the Defendants decided to submit a partially-agreed-upon order to the court and explain the narrow areas of remaining disagreement. And given the lack of compromise on the order as a whole, they retained the AI provision.

7. Wellmark and Lincoln take umbrage with Ms. Ervin's personal attacks. *See, e.g.*, ECF No. 58 ¶¶ 11, 30-36. Counsel for Wellmark and Lincoln have met and conferred, whether via phone or in writing, with Ms. Ervin in good faith throughout this litigation. When it is apparent

that the parties have reached an impasse on an issue such that no further dialogue will be productive, no further meet and confer efforts are warranted. For example, in this instance, Ms. Ervin made it clear—in writing—that she refused to agree to specific paragraphs of the draft protective order circulated by Wellmark and agreed to by Lincoln, but she confirmed she agreed to the majority of the draft order. No further conversations were expected to change Ms. Ervin's stance, and Wellmark and Lincoln were not planning to change their position on the paragraphs Ms. Ervin sought to revise or remove. Thus, impasse had been reached, and the parties just needed to move forward to obtain a protective order in this case.

8. Paragraph 2, as set forth in the draft Stipulated Protective Order filed at ECF No. 57-1, is language that is proper and is not unduly broad. The categories of documents that can conceivably be marked as "Confidential" by the parties, as set forth in paragraph 2, is the same list of categories that is included in the Northern District of Iowa's template protective order available on its website. Although it is very possible that not all of these categories of documents will be included in the ultimate corpus of documents exchanged by the parties, that does not make this provision improper. Further, as has been explained to Ms. Ervin by counsel for Wellmark and Lincoln during the protective order negotiation process, it is better to be overinclusive in the protective order now than draft it too narrowly such that the parties are forced to go back and revise and expand it later.

9. Paragraph 6 was added by counsel for Wellmark to the draft protective order from the Northern District of Iowa. It is apparent in this case that Ms. Ervin is utilizing a generative AI tool or program of some sort. Paragraph 6 ensures that if Ms. Ervin or any of the Defendants use an AI tool, they take certain precautions to protect the confidential nature of any "Confidential" documents exchanged by the parties or received from third-parties in this case. This is a reasonable

precaution to avoid "Confidential" documents from being uploaded into an AI platform, which may—without appropriate guardrails—effectively share the document with anyone who has access to the Internet.

10. Paragraph 8 sets forth the process by which outside independent persons as defined in paragraph 4(f) and "other individual[s] agreed upon by the parties in writing" in paragraph 4(i) should be disclosed to the other parties in the case and requires that they sign a "Written Assurance" form to be bound to the terms of the protective order. This is language pulled directly from the Northern District of Iowa's template protective order and is standard in such orders.

11. Paragraph 12 sets forth the process by which a party can contest the designation of documents by another party as "Confidential." This language is also pulled directly from the Northern District of Iowa's template protective order and is standard in such orders. It is important to include such a provision in any protective order to make it clear how the parties should approach any dispute about the designation of a document as "Confidential."

12. Finally, paragraph 13 sets forth what process should be followed at the conclusion of this litigation if a producing party would like to secure destruction of its "Confidential" documents that were produced in this case. This language is also pulled directly from the Northern District of Iowa's template protective order and is standard in such orders. It is important to include this type of provision in protective orders to provide clarity about how the parties can and should proceed with regard to "Confidential" documents at the end of the case.

Respectfully submitted,

Dated: July 24, 2026

/s/ *Leslie C. Behaunek*
Benjamin P. Roach, AT0006588
Leslie Behaunek, AT0011563
Nyemaster Goode, P.C.
700 Walnut, Suite 1300
Des Moines, Iowa 50309
Telephone: (515) 283-3100
Facsimile: (515) 283-8045
Email: bproach@nyemaster.com
lcbehaunek@nyemaster.com
**ATTORNEYS FOR THE WELLMARK DEFENDANTS**

**AND**

**LAW OFFICES OF IWANA RADEMAEKERS, P.C.**

/s/ Iwana Rademaekers
Iwana Rademaekers, Esq.
(Admitted *Pro Hac Vice*)
17304 Preston Road, Suite 800
Dallas, Texas 75252
Main: (214) 579-9319
Fax: (469) 444-6456
Email: iwana@rademaekerslaw.com

**AND**

**LEDERER WESTON CRAIG PLC**

/s/ Brenda K. Wallrichs
Brenda K. Wallrichs AT0008203
118 Third Avenue SE, Suite 700
P. O. Box 1927
Cedar Rapids, IA 52406-1927
Phone: (319) 365-1184
Fax: (319) 365-1186
E-mail: bwallrichs@lwclawyers.com
**ATTORNEYS FOR DEFENDANT THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notification of such filing to the following:

Sharilyn Ervin
8790 EP True Parkway, #303
West Des Moines, IA 50266

**PRO SE PLAINTIFF**

Dated: July 24, 2026

/s/ *Leslie C. Behaunek*
Leslie Behaunek, AT0011563