**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION**

| | |
|---|---|
| SHARILYN ERVIN,<br>**Plaintiff**,<br>**v.**<br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, WELLMARK INC. GROUP DISABILITY INCOME PLAN, WELLMARK, INC. d/b/a WELLMARK BLUE CROSS AND BLUE SHIELD OF IOWA, and WELLMARK, INC. WELFARE BENEFIT WRAP-AROUND PLAN,<br>**Defendants.** | Case No. 4:25-cv-00438-RGE-HCA<br><br>PLAINTIFF'S REPLY TO EFC 74 IN SUPPORT OF MOTION TO COMPEL DISCOVERY |

Lincoln's Resistance recites its 2024 and 2025 denials as though the record supports them without qualification. (Resistance 1–2.) It does not. The Policy defines "Non-Verifiable Symptoms" as subjective complaints "which cannot be diagnosed using tests, procedures or clinical examinations typically accepted in the practice of medicine," including dizziness, fatigue, headache, and pain — yet Lincoln's reviewers repeatedly discounted Plaintiff's reported symptoms on the ground that they were "subjective" and not independently verifiable, without acknowledging that the Policy itself contemplates such symptoms as a category to be evaluated, not dismissed.

Compounding this, Lincoln's initial December 31, 2024, denial did not include a vision-specialist review, despite convergence insufficiency being cited by Lincoln's own reviewing physicians as the central basis for Plaintiff's earlier approval and continued limitation. (Ex. B) These are the kind of unexplained gaps that bear directly on whether Lincoln's conflict of interest — as both evaluator and payor — affected the outcome of Plaintiff's claim, and why the discovery sought here, not speculation, is the appropriate means of examining that connection. See Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998); McIntyre v. Reliance Std. Life Ins. Co., 972 F.3d 955, 959 (8th Cir. 2020) (courts must weigh conflicts of interest and procedural irregularities in

evaluating whether a denial was arbitrary and capricious). Without the requested discovery, the Court is left to evaluate these irregularities in a vacuum. See Sampson v. Prudential Ins. Co. of Am., No. 4:08-CV-1290 CDP, 2009 U.S. Dist. LEXIS 24858 (E.D. Mo. Mar. 26, 2009); Kostecki v. Prudential Ins. Co. of Am., No. 4:14-CV-695 JCH, 2014 U.S. Dist. LEXIS 144297 (E.D. Mo. Oct. 10, 2014); Friemon v. Nat'l Carriers' Conf. Comm., 2018 U.S. Dist. LEXIS 199142, at *3 (E.D. Mo. Nov. 26, 2018).*

A procedural irregularity exists where a claims administrator fails to exercise judgment such that its decision is unreasonable. Weidner v. Fed. Express Corp., 492 F.3d 925, 928 (8th Cir. 2007). Federal regulations require a full and fair review of all evidence in determining a claim and any appeal. 29 C.F.R. § 2560.503-1. The absence of any vision-specialist review in the 2024 denial — notwithstanding that vision impairment was the very basis for Plaintiff's prior approval — is exactly the kind of irregularity these authorities contemplate, and is a further basis, along with those addressed below, for the discovery Plaintiff seeks. See Ex B. Additionally, a protective order was filed on August 26, 2026,. See EFC 75

**1. THE MCGEE DECLARATION CANNOT CARRY LINCOLNS REMAINING OBJECTIONS**

McGee is Lincoln's own Vice President & Senior Counsel for litigation, not a neutral custodian. (McGee Decl. ¶3.) Her statement that "no internal rules, guidelines, protocols, standard or other similar criteria were relied upon" (id. ¶10) is supported only by Lincoln's own October 9, 2025, denial letter — the very document whose adequacy is in dispute. Neither the letter nor the Declaration cites a Bates number, or any point in the claim file verifying that conclusion, in contrast to every other category Lincoln produced, which it tied to a specific Bates range. (Resistance at 8.) McGee's declaration also says nothing about compensation, denial-rate history,

or referral volume between Lincoln and Dane Street — the actual subject of Request No. 31 — and cannot support withholding it. Trade-secret objections to training and performance materials for the decision-makers on Plaintiff's claim (McGee Decl. ¶9) do not survive once the protective order addresses confidentiality; the relevance of that material to Lincoln's conflict of interest is well established. (See October denial ECF 74-1 pg. 103-121 Bates Lincoln/Ervin 00189- 00207)

Lincoln's "not relied upon" position inverts the regulatory standard. A document is relevant if it (i) was relied upon; (ii) was submitted, considered, or generated in the course of the determination, without regard to reliance; (iii) demonstrates compliance with the administrative safeguards required by § 2560.503-1(b)(5); or (iv) constitutes a statement of policy or guidance concerning the denied benefit, again without regard to reliance. 29 C.F.R. § 2560.503-1(m)(8). Existence and applicability are the test, not reliance — and McGee's own declaration admits Lincoln maintains "technical reference tools... applicable to certain types of claims." (McGee Decl. ¶10.) The Court will also require production of the internal claims handling guidelines. See Ennis v. Prudential Ins. Co. of America, No. 4:12CV00432 SNLJ, 2013 WL 203293 at *2 (E.D. Mo. Jan. 17, 2013) (holding the internal claims handling manuals are discoverable when discerning whether the administrator followed its own internal procedures.) Discovery is required to explore the nature and extent of the purported conflict or irregularity at issue." Sampson v. Prudential Ins. Co. of America, No. 4:08 cv-1290-CDP, 2009 WL 882407, at *2 (E.D. Mo. March 26, 2009) (citing Glenn, 554 U.S. at 116)

**2. THE RECORD SHOWS IRREGULARITIES LINCOLN DENIES EXIST**

Lincoln asserts that Plaintiff "fails to identify any such irregularities that are not apparent on the face of the administrative record." (Resistance at 6.) The record establishes otherwise. On September 17, 2024, Plaintiff sent Lincoln written notice revoking authorization for Lincoln to contact her providers "without myself or my advocate... present on the call or email or letters, fax and any means of communication." Lincoln acknowledged this the same day, with LTD Specialist Christine Colaneri confirming. (Ex. A.) Despite this, on December 4 and 5, 2024, Lincoln's psychiatric reviewer attempted direct phone contact with Dr. Schissel without Plaintiff or her advocate present or notified in advance, and Lincoln never informed Plaintiff that this contact was attempted. Ironically, Lincoln's own 2024 denial cites difficulty obtaining provider records as a factor, while Lincoln's own contact attempts occurred without the notice Plaintiff

had required. Plaintiff notes in past Lincoln cited issues with getting medical records to ensure the process was efficient. Plaintiff revoked medical authorizations to avoid miscommunications. Plaintiff notes request were made for policy during appeal process and that the policies whether relied upon or not should be included in the administrative record See Ex C

The same pattern appears in Lincoln's handling of Dr. McCarthy's review, which Lincoln's Resistance itself relies on. (Resistance at 2.) The October 9, 2025, denial letter states Plaintiff submitted a home sleep test dated September 8, 2025, on appeal, and that her additional documentation "do[es] not provide significant new clinical findings that would alter the previous assessment" — without identifying any reviewer who addressed that specific test. Dr. McCarthy's addendum, by its own terms, addresses records only through August 11–12, 2025, and states' sleep apnea was "suspected but not yet confirmed." Federal regulation required Lincoln to consult a health care professional in connection with a medical judgment on appeal and to ensure that consultation reflected the evidence actually submitted. 29 C.F.R. § 2560.503-1(h)(3)(iii). A procedural irregularity is said to exist where the plan administrator, in the exercise of its power, acted dishonestly, from improper motive, or failed to use sound judgment in reaching its decision. Menz v. Procter & Gamble Health Care Plan, 520 F.3d 865, 869 (8th Cir. 2008). See also Willcox v. Liberty Life Assurance Co. of Boston, 552 F.3d 693, 701 (8th Cir. 2009) ("A plan administrator abuses its discretion when it ignores relevant evidence."); Sahulka v. Lucent Techs., Inc., 206 F.3d 763, 769 (8th Cir. 2000) (finding that a lack of a thorough investigation by a fiduciary can result in a serious procedural irregularity.

Plaintiff has shown good cause to conduct agreed upon conflict of discovery. A plaintiff can show good cause by establishing that the administrative record is insufficient to establish a "palpable conflict of interest" or a "serious procedural irregularity." Woodrome v. Ascension

Health, No. 4:19-cv 02638-JCH, 2020 WL 1479149, at *2 (E.D. Mo. March 26, 2020). Conflicts of interest exists whenever the same entity both determines benefits eligibility under an ERISA plan and pays the benefits out of its own pocket. Metro Life Ins. Co. v. Glenn, 554 U.S. 105, 114 (2008) Lincoln's response that 'all relevant non-privileged documents... have been produced' (Resistance at 8) does not identify a single email, chat log, or internal note reflecting communications between Lincoln and Wellmark regarding Plaintiff's claim, nor does it include a privilege log identifying any withheld communications, as required by Fed. R. Civ. P. 26(b)(5)(A). A blanket assurance of completeness, without a log accounting for anything withheld, does not permit Plaintiff or the Court to verify that the representation is accurate.

**IV. THE DISCOVERY SOUGHT IS NARROWLY TAILORED TO THE CONFLICT OF-INTEREST ISSUE, NOT A FISHING EXPEDITION**

Lincoln characterizes Plaintiff's requests as an "unwieldy, burdensome, and speculative fishing expedition. That characterization does not hold up against the actual scope of what remains at issue. Plaintiff is not seeking Lincoln's entire claims history or unrelated files. The outstanding requests are limited to: (1) the specific provisions of Lincoln's technical reference tools relevant to Plaintiff's own claim; (2) the Dane Street contract and referral data bearing on the conflict-of-interest issue; and (3) internal guidelines that would show whether Lincoln followed its own claims-handling procedures in Plaintiff's case specifically.

**Conclusion For** the reasons stated herein, this Court should grant the Plaintiff's motion for limited discovery and order administrative file to be certified and supplemented.

Respectfully Submitted

/s/ Sharilyn Ervin

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of August 2026, I electronically filed the foregoing using the ECF system which will send notification of such filing to the following individual or counsel of record:

**Pro Se Plaintiff** Sharilyn Ervin Email: ervinsharilyn2009@yahoo.com

**Counsel for Defendant Wellmark, Inc. Group Disability Income Plan** Benjamin Patrick Roach Email: bproach@nyemaster.com

**ATTORNEYS FOR DEFENDANT THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Iwana Rademaekers, Esq. (Admitted Pro Hac Vice) 17304 Preston Road, Suite 800 Dallas, Texas 75252 Main: (214) 579-9319 Fax: (469) 444-6456 Email: iwana@rademaekerslaw.com

Brenda K. Wallrichs AT0008203 118 Third Avenue SE, Suite 700 P. O. Box 1927 Cedar Rapids, IA 52406-1927 Phone: (319) 365-1184 Fax: (319) 365-1186 E-mail: bwallrichs@lwclawyers.com